## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PRYOR, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17 C 1968 |
| | ) |
| MICHAEL CORRIGAN, NATHANIEL ISAAK, | ) Judge Steven C. Seeger |
| GREGORY CHRISTOFFEL, DAMIEN | ) |
| CANTONA, RONALD F. McNEFF, RICHARD | ) |
| CORNFORTH, DANNY RIOS, MATTHEW | ) |
| BONNIE, RICKEY AHLGREN, THOMAS | ) |
| HINTERLONG, MARK WEEKS, UNKNOWN | ) |
| OFFICERS OF THE AURORA POLICE | ) |
| DEPARTMENT, and CITY OF AURORA, | ) |
| ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S MOTIONS *IN LIMINE*

Plaintiff, Nathaniel Pryor, by and through his attorneys, Irene K. Dymkar and

Shamoyita M. DasGupta, hereby moves this Court for an order granting his motions *in limine*.

In support thereof, plaintiff states as follows:

**Plaintiff's Motion *in Limine* #1: To bar all evidence, testimony, and arguments regarding the surveillance of Raymond Johnson prior to plaintiff's arrest.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Defendants should be barred from introducing evidence, testimony, and arguments

regarding the alleged surveillance of Raymond Johnson at a home prior to plaintiff's arrest. They

are speculative and grossly prejudicial to plaintiff.

According to Aurora officers Damien Cantona and David Tellner, an unnamed tipster with unknown reliability told Cantona that a man named Raymond Johnsons would be cooking cocaine at a house on Kane Street. The alleged surveillance by Cantona and Tellner amounted to watching a van pull out of a driveway at 1020 Kane Street in Aurora, Illinois and drive away, with unknown occupants. There was absolutely no observation of any criminal activity or even any suspicious activity. Doc. 84 at 3-5. Moreover, the identity of the informant was never disclosed to plaintiff, despite his request to have the identity disclosed and to be allowed to depose the informant, to probe his reliability.

Defendants used the surveillance being conducted on Raymond Johnson to justify their stop of the vehicle in which plaintiff was a passenger, and to justify their treatment of plaintiff and his arrest. As defendants argued in their memorandum in support of their motion for summary judgment, "this was a drug raid fraught with danger." Doc. 86 at 4. However, there was no evidence to support this statement. This is impermissible bootstrapping.

Notably, this Court did not appear to place much weight on the prior surveillance of Raymond Johnson and his residence in ruling on the parties' motions for summary judgment. Doc. 141. Aside from citing to the defendants' recitation of the facts as they pertained to the stop in the Court's statement of the background of the case, the Court did not rely on the surveillance in its analysis of the parties' motions for summary judgment. In reaching its ruling on the parties' motions and on the claims remaining in the case, the Court referred to the traffic stop that led to plaintiff's arrest and to the excessive force used against him. In determining whether the defendants had probable cause for the false arrest in this case, the Court analyzed the issue in the context of the traffic stop, not in the context of the previous surveillance. The Court noted that

2

"when Officer Corrigan arrived on the scene, he knew that Pryor had been pulled over as part of a traffic stop." Doc. 141 at 24. The case law the Court relied on in reaching its ruling was case law pertaining to traffic stops. There was no further discussion of the surveillance in the Court's opinion after it was discussed early on in the opinion, prior to any analysis of plaintiff's claims.

Defendants are hell-bent to use their surveillance of Raymond Johnson, which did not amount to any evidence of criminal activity, to justify at trial defendants' behavior, as they did in their motion for summary judgment. Extrinsic evidence, testimony, and arguments about the prior surveillance on Raymond Johnson would be extremely prejudicial to plaintiff, who vigorously claims he was not committing any illegal activity prior to the traffic stop and his arrest.

Of significance, defendants made judicial admissions that they did not have probable cause to arrest Nathaniel Pryor for any crime or infraction when they stopped the van that Terry Mading was driving. Doc. 99-6, 99-9 at #19, 20.

The case law is clear that a mere suspicion of illegal activity at a particular place is not enough to transfer that suspicion to anyone who leaves that property. *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012). In *Bohman,* police stopped defendant's car after it emerged from a 40-acre tract containing a suspected methamphetamine cook site. Although police had recently received tip from informant regarding the site, they had not confirmed informant's statements. The Court held that police lacked reasonable suspicion to justify stopping defendant's car.

The Court has made a finding that there was probable cause to stop the vehicle in which plaintiff was a passenger based on the traffic violation committed by the driver of the van, Terry

Mading. The earlier surveillance and the hearsay tipster information have nothing to do with the determination that there was probable cause to stop and arrest plaintiff. See Fed.R.Evid. 401. There would be a danger of unfair prejudice and confusion of the issues, and the jury would be misled, if defendant officers were allowed to testify about their hunches. Fed.R.Evid. 403. "Evidence is unfairly prejudicial where 'its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Barber v. City of Chicago*, 725 F.3d 702, 704 (7th Cir. 2013); quoting *Thompson v. City of Chicago*, 472 F.2d 444, 456-57 (7th Cir. 2006).

All evidence, testimony, and arguments regarding the surveillance of Raymond Johnson prior to plaintiff's arrest, and the hearsay information from the unnamed tipster, which are not relevant to this case, should be barred.

**Plaintiff's Motion *in Limine* #2: If the Court allows evidence, testimony, and argument about the surveillance, then plaintiff moves to introduce evidence, testimony, and argument that officers told Nathaniel Isaak to "find probable cause" to pull the van over.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Officer Nathaniel Isaak testified at deposition that defendant Cantona wanted him to follow the van in which plaintiff was a passenger "to find my probable cause to stop the vehicle." Doc. 99-15 (Isaak Dep. Tr.) at 95. The traffic stop was a pretext to search the van and its occupants for drugs. If information about the surveillance comes in over plaintiff's strong objection, then the jury should be informed that the stop was a pretext.

The case law is clear that since the stop was a traffic stop, officers would have to right to detain passengers for only the amount of time it would take to investigate the traffic stop. *See*

*United States v. Yancey*, 928 F.3d 627, 631 (7th Cir. 2019) (cleaned up). Also, officers may "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous," not a full search. *Arizona v. Johnson*, 555 U.S. 323, 332 (2009) (cleaned up).

Aurora police conducted themselves as if this was a dangerous drug bust, when there was no proof whatsoever that any drug crime had been committed or was being committed. If the Court allows proof of the surveillance that yielded no incriminating evidence, or the hearsay statements from the unidentified tipster of unknown reliability, over plaintiff's objection, then it is important for the jury to have some context on why the stop actually took place, as a pretext.

If the Court allows evidence, testimony, and argument about the surveillance, and the alleged tipster, then plaintiff should be allowed to introduce evidence, testimony, and argument that officers told Nathaniel Isaak to "find probable cause" to pull the van over.

**Plaintiff's Motion *in Limine* #3: To bar all evidence, testimony, and arguments that defendants believe that plaintiff is a drug dealer, or that he had money on his person when he was searched.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.
.

At their depositions, when asked whether they knew plaintiff prior to the incident that gave rise to this lawsuit, defendants Corrigan and Cantona both stated that plaintiff was an alleged drug dealer. Defendant Cantona testified, however, that he could not recall ever actually witnessing a specific incident of plaintiff selling drugs or ever personally arresting plaintiff. Doc. 99-17 (Cantona Dep. Tr.) at 46:13-15, 47:10-24. Defendant Corrigan testified that he believed plaintiff had been arrested in the past for alleged drug crimes. Doc. 99-14 (Corrigan Dep. Tr.) at

5

116:3-8, 183:4-17. However, the only time he recalled having arrested plaintiff himself was for a traffic violation in 2014. Id. at 114:19-24.

When defendant Corrigan searched plaintiff, he found money on his person. Plaintiff stated that he worked and had just been paid. Plaintiff asks that the Court bar any inference that the money on his person was "drug money," since there is no proof of this.

On the date of the incident, plaintiff was not arrested for any drug-related crimes and defendants made judicial admissions that they had no probable cause to arrest plaintiff before stopping the van he was riding in. It would be unduly prejudicial to permit defendants to testify as to their speculative belief that plaintiff was a drug dealer to justify their behavior towards him. This would mislead the jury into making a decision for the wrong reasons. *See Barber v. City of Chicago*, 725 F.3d at 704.

**Plaintiff's Motion *in Limine* #4: To bar all evidence, testimony, and arguments that plaintiff was a member of a gang or on a gang database.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

At their depositions, defendants Corrigan and Cantona both made reference to plaintiff allegedly being a member of a gang, or being on a gang database. Such speculative evidence should be barred. *See e.g., Nelson v. City of Chicago*, 810 F.3d 1061, 1074-75 (7th Cir. 2016) (finding speculation testimony about what a police officer "would have" done prejudicial).

Pursuant to the Illinois Streetgang Terrorism Omnibus Prevention Act (740 ILCS 147/10), the definition of a gang member is as follows:

> Any person who actually and in fact belongs to a gang, and any person who knowingly acts in the capacity of an agent for or accessory to, or is legally

6

accountable for, or voluntarily associates himself with a course of pattern of gang-related criminal activity, whether in a preparatory, executory, or cover-up phase of any activity or who knowingly performs, aids, or abets any such activity.

Defendants cannot point to any observations or any activities plaintiff engaged in on the date of the incident that gave rise to this lawsuit that constituted gang activity or denoted gang membership. Moreover, on the date of the incident, plaintiff was not arrested for any gang-related crimes.

To the extent any of the Aurora officers who may testify have worked or are working in a gang unit, they should be barred from saying so. Where a case has nothing to do with gang activity, courts have barred officers from mentioning that they are in gang unit because any mention of gang activity may inflame the jury. *Jones v. City of Chicago*, 2017 WL 413613, at *12 (citing cases).

It would be unduly prejudicial to permit defendants to testify as to their unsubstantiated belief that plaintiff was a member of a gang, which might cause the jury to make an inference that plaintiff was committing a crime on the date of the incident, or is an inherently violent person and this somehow justified defendants' behavior towards him. Such an inference runs the risk that the jury will make an emotional decision, not one based on the facts. *See Barber v. City of Chicago*, 725 F.3d at 704.

Plaintiff requests the Court bar all speculative testimony and arguments that plaintiff was a member of a gang or on a gang database.

**Plaintiff's Motion *in Limine* #5: To bar any evidence, testimony, or argument that implies that the arrest took place in a high crime, drug, or gang area.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

In his deposition, defendant Corrigan testified that he knew the general area where the incident took place to be a high crime area. Plaintiff asks the Court to issue an order barring any evidence or testimony that the neighborhood in which he was arrested was "a high crime area" or "a high drug area" or "a gang area." This labeling is opinion evidence that is vastly more prejudicial than probative of any legitimate issue in this trial and is inadmissible under Fed.R.Evid. 403.

To the extent defendants' probable cause calculation comes in as evidence, to justify the arrest or the search, it must be noted that an officer's subjective beliefs are irrelevant to the probable cause inquiry. *See United States v. Garcia-Garcia*, 633 F.3d 608, 612-13 (7th Cir. 2011). Probable cause only exists when an officer has a "reasonable" belief that a law has been broken. At all times, the standard is objective. *Id.,* citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *see Scott v. United States*, 436 U.S. 128, 137 (1978) (in evaluating alleged violations of the Fourth Amendment, a court first undertakes an objective assessment of an officer's actions in light of the facts and circumstances then known to the officer).

Plaintiff asks the Court to bar any evidence, testimony, or argument that implies that plaintiff was arrested in a high crime, drug, or gang area.

**Plaintiff's Motion *in Limine* #6: To bar all evidence, testimony, and arguments regarding past convictions or arrests of plaintiff because the undue prejudice outweighs the relevance.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

**Plaintiff's convictions should not be admissible**

Defendants seek to offer proof of convictions of Nathaniel Pryor for unlawful restraint (2011), aggravated battery (2014), and domestic battery (2016). All these convictions arose from domestic altercations.

Plaintiff agrees that Fed.R.Evid.609(b) applies. However, by the terms of Rule 609(b), felony convictions within the past ten years are admissible "subject to Rule 403." "[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Anderson v. City of Chicago*, No. 09 C 2311, 2010 WL 4928875, at *2 (N.D. Ill. Nov. 30, 2010), citing *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir.1992).

As noted by Judge St. Eve in *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *9 (N.D. Ill. Jan. 31, 2017), the Seventh Circuit has identified in criminal cases five considerations for weighing probative value against prejudicial effect which "may illuminate the court's analysis" in civil cases. Those considerations are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (cleaned up).

With regard to the first factor, the impeachment value of the prior crime on the issue of credibility, the crimes of unlawful restraint, aggravated battery, and domestic battery are not indicative of truthfulness. *See Buchanan v. McCann*, No. 08 C 7063, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012) (murder does not implicate truthfulness); *Jones v. Sheahan*, No. 99 C 3669, 01 C 1844, 2003 WL 21654279, at *2 (N.D. Ill. July 14, 2003) (the offense of murder is

9

not highly probative of credibility, and the risk of unfair prejudice would result from the admission of that evidence is substantial"); *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985) (conviction for rape was not highly probative of credibility). In plaintiff's case, the impeachment value of his convictions with regard to his credibility is negligible.

With regard to the second factor, the date of the conviction, the first conviction for unlawful restraint is almost 10 years old. That weighs in favor of excluding the conviction.

With regard to the third factor, the similarity of the offense, the facts underlying the three felony convictions weigh against admission of the convictions. All convictions involve physical altercations and the excessive force allegation here, of Officer Corrigan punching plaintiff at a point at which Corrigan claims plaintiff was resisting arrest, also involves a physical altercation. The crimes are not so dissimilar that there would not be "a risk the jury could conflate [plaintiff's] past conduct with his conduct at issue in this case." *Jones v. City of Chicago*, 2017 WL 413613, at *10, fn 2. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997) (noting that similarity between the current crime and the past crime increases the "possibility of the jury's inferring guilt on a ground not permissible under Rule 404(b)"). The unavoidable and impermissible inference that would be made by the jury here is that plaintiff has a propensity for violence.

With regard to the fourth factor, the importance of the defendant's testimony, plaintiff is the only witness who can testify on his behalf. His testimony is critically important to his case, and no one can take his place. Therefore, this factor weighs heavily towards the convictions being inadmissible. *See Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 2637214, at *2 (N.D. Ill. June 6, 2011); *see also Buchanan v. McCann*, 2012 WL 1987917, at *1.

With regard to the fifth factor, the centrality of the credibility issue, once again, plaintiff is the only one who will contradict the government's defense. His credibility is central. *See United States v. Gant*, 396 F.3d 906, 910 (7th Cir. 2005); *Jones v. City of Chicago*, 2017 WL 413613, at *10.

Four or five of the factors thus weigh against admission. Additionally, because testimony about domestic violence is likely to elicit such an emotional reaction in the jury, the Court should exercise the utmost care to avoid the risk that the jury will consider the evidence of plaintiff's convictions for improper purposes. *See Barber v. City of Chicago,* 725 F.3d at 714 ("Presenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers."); *Jones v. Sheahan*, 2003 WL 21654279, at *2 (evidence of Mr. Jones's murder conviction might lead a jury to deny Mr. Jones an award " 'not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent.'").

Because the potential for prejudice outweighs the probative value of the convictions, plaintiff's three felony convictions should be barred.

**Plaintiff's arrests are not admissible.**

Defendants may try to question plaintiff about his arrest record. It is well established that an arrest record of a witness is not admissible. *Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013). "An arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty."

*Michelson v. United States*, 335 U.S. 469, 482; *see Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016)[1].

Regarding any attempt by the defense to use a prior arrest to mitigate damages, the Seventh Circuit has stated in *Nelson v. City of Chicago*, *supra,* that the defense theory to do so appears to be either that a person's history of arrests 1) lessened his fear of the police (because being arrested was old hat for him, and he was used to being arrested), or 2) augmented it (because his numerous encounters with the police suggest that some of his emotional injury might have been preexisting). The Court debunked both theories, saying it is unclear whether the damages "mitigation" theory is even viable given the rule that "[t]he tortfeasor takes his victim as he finds him. That is the 'eggshell skull' rule, which like most principles of the common law of torts is applicable to a constitutional tort case brought under 42 U.S.C. § 1983." *Id.* at 1068, fn. 2.

Because the potential for prejudice outweighs the probative value of the arrests, plaintiff's arrest record should be barred.

**Plaintiff's Motion *in Limine* #7: To bar all evidence, testimony, and arguments as to dismissed defendants or dismissed claims.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Plaintiff filed his complaint in good faith, setting forth all the plausible claims based on the information known at the time. Plaintiff obtained the names of the participants in the police incident from police reports and City of Aurora records. Although plaintiff fought hard to defend against summary judgment, the Court dismissed certain claims and defendants.

---

[1]  *Nelson v. City of Chicago* was litigated in the trial court and on appeal by plaintiff's counsel here.

It would unduly prejudice plaintiff for the jury to be told or to hear that certain claims were dismissed or that certain officers who were once parties have now been dismissed. This information would mislead and confuse the jury. Fed.R.Evid. 403. The jury should not be misled into believing that because claims were dismissed against certain officers, the remaining claims against the remaining officers are not viable.

Defendants should be barred from presenting all evidence, testimony, and arguments as to dismissed defendants or dismissed claims.

**Plaintiff's Motion *in Limine* #8: To permit plaintiff to play the video of the traffic stop from when the dash camera videos were turned on, until 00:04:45 for Isaak video and until 00:04:25 for the Corrigan video, with the audio of Officer Isaak and part of the audio of Officer Corrigan redacted.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

This Court has ruled that whether defendant Corrigan's two punches to plaintiff's head was excessive force is an issue for the jury, but ruled that the initial tackle by defendant Corrigan when he took plaintiff to the ground was not a constitutional violation. If the Court required the parties to only play the recording of the incident starting from the moment of the two punches, that would be confusing to the jury.

Plaintiff seeks to play from the beginning of the dash camera videos, one from Nathaniel Isaak's marked squad car in the lead and the other from Corrigan and Christoffel's unmarked police vehicle parked behind Isaak's vehicle, until the relevant portion is over. For Isaak's video, the relevant portion ends at 00:04:45 and for Corrigan/Chrisoffel's video, the relevant portion ends at 00:04:25.

13

The videos should be played from the beginning to give the jury some context. The conduct of the parties immediately prior to the incident at issue before the jury is relevant. *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) "'[O]ne measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story.'" Id. To begin the video abruptly at the moment just before the two punches could create such a chronological and conceptual void in the story. Further, "even where evidence is not directly related to a disputed fact, it may be relevant when it provides background information." *Id.* at 930. Background information that allows the jury to put the conduct of the parties into context is relevant. *Id.* at 931.

As the Court noted in its ruling, the "entire interaction between Officer Corrigan and Pryor lasted less than a minute." Editing the video so that it begins just before the two punches removes important context for the jury. For the jury to understand the interaction with Corrigan, they need to see the entire interaction, not the few seconds where defendant Corrigan actually struck plaintiff. Otherwise, there is a risk of misleading and confusing the jury.

The audio for Isaak comes from a microphone he was wearing, so when he takes off running and is yelling and panting, that happens away from where Nathaniel Pryor is. In fact, most of what he is saying is not even within earshot of plaintiff and defendant Corrigan. Isaak is running in the back yards and then down the street. It would be very confusing for the jury, and prejudicial to plaintiff, for the jury to hear what Isaak is saying to Robert Johnson, who is running away from the police. The jury may not comprehend that the audio they are hearing is not connected in space with the video they are viewing. Therefore, plaintiff moves to have all of the Isaak audio redacted from the video.

14

With regard to the Corrigan audio, there are statements made by Corrigan that are self-serving and are clearly not the law. After 00:03:30, he attempts to assert by his statements that it was illegal for plaintiff to exit the van. There is no case law that plaintiff could find that states that. There are cases that hold that the police can order a passenger out of a vehicle. There are cases that hold that a passenger cannot run flee, that is, *run away from* the police. But plaintiff could find no cases that say that it is illegal for a passenger to exit a vehicle when the vehicle is stopped for a traffic stop. Corrigan's statements that there is "a problem" when a passenger leaves a vehicle, or that he wants to go home to his family, are unduly prejudicial and would be an inappropriate plea to the sympathies of the jury. Corrigan's statements are not excited utterances "made while the declarant was under the stress of the excitement that cause it." Fed.R.Evid.803(2). These statements are rationalization expressed after the facts. They are an attempt to justify conduct by pretending to know the law, and Corrigan's statement of the law was incorrect. Allowing the jury to hear Corrigan's statements would create a risk that jurors would react in an emotional way, rather than working to analyze the evidence presented. *See United States v. Seals*, 813 F.3d 1038, 1043 (7th Cir. 2016); *Lewis v. Chicago Police Dept.*, 590 F.3d 427, 441 (7th Cir. 2009). This is prejudicial to plaintiff.

Plaintiff will explain at trial that he exited the van and walked to the front of Isaak's police vehicle to get out of the way of the pursuit of Johnson that had begun, and to get in front of the dash camera and stop, so that anything the police did to him would be recorded. This was a very smart move for a young Black man who was being confronted by white police officers.

Plaintiff asks the Court to permit him to play the video of the traffic stop, from when the dash camera videos were turned on, until 00:04:45 for Isaak video and until 00:04:25 for the

Corrigan video, with the audio of Officer Isaak and part of the audio of Officer Corrigan

redacted, as described herein.

**Plaintiff's Motion *in Limine* #9: To permit plaintiff to read defendants' admissions in response to plaintiff's requests to admit, and precluding defendants from contradicting those admissions.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

During discovery, as part of plaintiff's written discovery requests, plaintiffs propounded requests to admit to all defendants. Defendants timely responded to plaintiff's requests. Plaintiff should be permitted to read defendants' judicial admissions in response to plaintiff's requests to admit to the jury at trial. Furthermore, because these are judicial admissions, defendants should be precluded from contradicting those admissions with their testimony from the stand. Plaintiff has attached as Exhibit A the admissions he asks to be allowed to read at trial.

A matter admitted in response to a request to admit is a "judicial admission," "conclusively established" unless the court permits the admission to be withdrawn. Fed.R.Civ.P. 36(b); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). Such admissions are binding on the party that makes them and may not be controverted at trial or on appeal. Indeed, they are "not evidence at all" but rather "concessions" that "have the effect of withdrawing a fact from contention." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995), quoting Michael H. Graham, Federal Practice and Procedure: Evidence § 6726 (Interim Edition).

The court in *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) clearly described the distinction between a judicial admission and an evidentiary admission:

> A judicial admission is conclusive. If a response to a request for admissions admits an issue of liability, then the defendant cannot thereafter deny that issue of

liability on the ground that there is evidence that the admission is mistaken. A judicial admission trumps evidence. *Id; see Whitlock v. Brow*, 596 F.3d 406, 412 (7th Cir. 2010); *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000).

Extrajudicial evidentiary admissions by a party opponent, because they have the "badge of reliability sufficient to overcome the hearsay objection of out-of-court statements offered for their truth" are admissible as evidence. *Murrey*, 73 F.3d at 1455; Fed.R.Evid. 801 (d)(2). However, "[p]eople do sometimes make mistaken admissions, which is why an extrajudicial admission, not made with the same deliberateness as a judicial admission, is not conclusive of the issue admitted." *Murrey*, 73 F.3d at 1455.

Extrajudicial admissions are mere evidence and can be explained and controverted. Judicial admissions cannot. *See Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481 (7th Cir. 1997) ("judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." Plaintiff should be permitted to read defendants' judicial admissions in response to plaintiff's requests to admit to the jury at trial for their consideration. Defendants should be precluded from contradicting those admissions with their testimony from the stand.

Plaintiff therefore requests the Court permit him to read defendants' judicial admissions in response to plaintiff's requests to admit to the jury at trial for their consideration, and that the Court bar defendants from contradicting those admissions with their testimony from the stand.

**Plaintiff's Motion *in Limine* #10: To bar improper bolstering of defendants through testimony as to awards or commendations, or by wearing special police uniforms or medals and badges.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Plaintiff moves, pursuant to Fed. R. Evid. 401, 402, 403, 404, and 802, to bar improper bolstering by defendants with testimony of awards and commendations, or by wearing special police uniforms or medals and badges. Such testimony and physical presentation is inadmissible hearsay and improper bolstering and should be excluded. Fed.R.Evid. 802. Defendants' commendations are not probative of plaintiff's damages or the defenses thereto. Fed.R.Evid. 402.

Testimony regarding awards and commendations constitutes character evidence, which is generally inadmissible pursuant to Fed.R.Evid. 404(a). As was held in *Charles v. Cotter*, 867 F. Supp. 648 (N.D. Ill. 1994), evidence of this nature would serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the day in question. *Id.* at 659, fn 6. Unlike proper Fed.R.Evid. 404(b) evidence, such evidence does not go to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id. See Graham v. Bennett*, 2007 U.S. Dist. Lexis 17902, 9-10 (C.D. Ill.). ("Evidence of prior commendations could serve the improper function of providing evidence of action in conformity with Defendant's prior good performance on the police force").

Police officers wearing their medals and badges in court would amount to improper character evidence and bolstering of police credibility. *See United States v. Bonner*, 302 F.3d 776, 780 (7th Cir. 2002) ("witness bolstering is prohibited in order to enhance an individual's credibility"). Courts have long recognized the risk that jurors will be inclined to credit the testimony of police officers due to their official status and have cautioned that courts must guard against unfair prejudice. *See, e.g., Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir. 1985) ("civil rights actions often pit unsympathetic plaintiffs...against the guardians of the community's safety, yet serve an essential deterrent function"). Special police uniforms and badges and medals send

18

a powerful signal that the police witnesses should be regarded as credible and reliable and special. Such character evidence is improper and should be barred.

Plaintiff asks the Court to issue an order barring improper bolstering of defendants by testimony as to awards or commendations, and by defendants wearing special police uniforms or medals and badges.

**Plaintiff's Motion *in Limine* #11: To declare all witnesses employed by the City of Aurora adverse witnesses and to allow plaintiff's counsel to ask leading questions, pursuant to Federal Rule of Evidence 611(c).**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Plaintiff moves, pursuant to Fed.R.Evid. 611(c), for an order allowing plaintiff to treat defendants and all other officers and City of Aurora employees as adverse witnesses. Police officer witnesses who are not defendants but have an inevitable loyalty to the police officers on trial should be considered hostile and be subject to cross-examination. City employees are also adverse and plaintiff's counsel should be allowed to ask them leading questions.

When a city is a defendant in a § 1983 action and city police officers are present at the incident giving rise to the lawsuit, they are witnesses "identified with an adverse party." *See Ellis v. City of Chicago,* 667 F.2d 606, 612–13 (7th Cir. 1981); *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *7 (N.D. Ill. Jan. 31, 2017). In *Ratliff v. City of Chicago*, No. 10-cv-739, 2013 WL 3388745, at *7 (N.D. Ill. July 8, 2013), even police officers with a "tangential or limited" involvement with the case who were not present during an arrest that was at issue were considered by the Court to be witnesses identified with an adverse party. 2013 WL 3388745, at *7.

19

Plaintiff asks the Court to declare all Aurora employees adverse pursuant to Fed.R.Evid.

611(c), and subject to plaintiff's cross-examination, even if called by plaintiff at trial.

**Plaintiff's Motion *in Limine* #12: To bar all witnesses from the courtroom except when the witness is testifying, pursuant to Federal Rule of Evidence 615.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and sent the motion to Mr. Murphey on May 22, 2021, for review. The motion is opposed.

Plaintiff moves to bar, prohibit, and restrict all non-party witnesses from being present in

the courtroom except when the witness is testifying. See Fed.R.Evid. 615.

**Plaintiff's Motion *in Limine* #13 (UNOPPOSED): To bar any evidence, testimony, reference to, or use of any police reports by defendants.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and the motion is unopposed.

Plaintiff requests that the Court bar any evidence, testimony, reference to, or use of

Aurora police reports. Information from police reports should not be considered because it is

inadmissible hearsay. *See Orlowski v. Milwaukee Cty.*, 872 F.2d 417. 424 (7th Cir. 2017);*United*

*States v. Jordan*, 742 F.3d 726 (7th Cir. 2014). Moreover, when a document contains multiple

layers of hearsay, as some parts of the police reports do, each layer must be admissible for the

report to be admissible. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

While plaintiff may use police reports to impeach defendants, or as admissions of a party

opponent, defendants themselves should not be allowed to affirmatively bolster their testimony

with the use of self-serving hearsay police reports.

20

**Plaintiff's Motion *in Limine* #14 (UNOPPOSED): To bar testimony, evidence, and argument that plaintiff is poor or is receiving public assistance.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and the motion is unopposed.

Plaintiff fears that defendants may try to cast aspersions on him because he is poor, he works at temporary jobs, and at times, he receives public assistance. Questions such as "How do you pay your rent?" or "What do you live on?" imply that plaintiff makes a living from criminal activity, and feed the prejudices and stereotypes that some jurors may have. Defense counsel may argue plaintiff brought this case for financial gain, which may imply that plaintiff has a "get rich quick" attitude. That would be unduly prejudicial and would be comical if it were not harmful to plaintiff, in that no one would wait more than six years for a trial as a "get rich quick" scheme.

These arguments defendants may make run counter to the purpose of 42 U.S.C. § 1983. Citizens who live in a humble abode or who are unemployed have as many rights to be secure in their persons, houses, papers, and effects as do wealthy people. A poor person has as much of a right to assert a civil rights claim as a rich person. Evidence of plaintiff having a low income is prejudicial and would be distracting to the jury, who may react in an emotional way, rather than working to analyze the evidence presented. *See United States v. Seals*, 813 F.3d 1038, 1043 (7th Cir. 2016); *Lewis v. Chicago Police Dept.*, 590 F.3d 427, 441 (7th Cir. 2009).

Any evidence or testimony regarding plaintiff's economic status is vastly more prejudicial than probative of any legitimate issue in this trial and is inadmissible under Fed.R.Evid. 403. It should be barred.

**Plaintiff's Motion *in Limine* #15 (UNOPPOSED): To bar all evidence, testimony, and arguments attempting to blame plaintiff for the passage of time between the incident and the trial.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and the motion is unopposed, as long as this arrangement is reciprocal, to which plaintiff agrees.

Plaintiff asks the Court to prohibit defendants from blaming plaintiff for the passage of time between the incident and trial. Defendants should not be allowed to garner sympathy that they are being forced to defend a case that happened "so long ago," and argue that they have arrested so many people since 2015 that they cannot remember anything about this incident. Plaintiff has waited patiently for his day in court and the insult and injury to him should not be trivialized because it happened in 2015.

Defendants should not be allowed to argue or imply that it is wrong to make them defend a case at this late date, and they should not be allowed to cast blame on plaintiff for continuing to pursue this matter. There would be a danger of unfair prejudice if defendant officers were allowed to garner sympathy from the jury in this matter. Fed.R.Evid. 403. *See Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013), quoting *Thompson v. city of Chicago*, 472 F.3d 444, 456-57 (7th Cir. 2006).

**Plaintiff's Motion *in Limine* #16 (UNOPPOSED): To bar defendants from gaining an unfair advantage by using law enforcement criminal databases to investigate the backgrounds of jurors and from selectively doing criminal background checks on jurors the defense wants to challenge.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and the motion is unopposed.

Plaintiff asks that the Court bar defendants from gaining an unfair advantage by using federal, state, or municipal criminal databases to investigate the backgrounds of jurors and from

selectively running criminal background checks on targeted jurors or potential jurors at any point in the trial. The use of law enforcement resources to check on jurors has been a problem in the Northern District of Illinois in the past. The practice is illegal and it gives the defense an unfair advantage during jury selection.

Plaintiff asks the Court to issue an order barring defendant police officers and their attorneys from using law enforcement databases to investigate the background of jurors.

**Plaintiff's Motion in Limine #17 (UNOPPOSED): To bar defendants from using financial circumstances as a defense to plaintiff's claim for punitive damages.**

Plaintiff hereby certifies that plaintiff's attorney, Irene K. Dymkar, spoke with defendants' attorney, John B. Murphey, about this motion *in limine* on May 14, 2021, and the motion is unopposed.

Defendants have not disclosed their financial circumstances. They should be barred from asserting financial hardship as a defense to plaintiff's claim for punitive damages.

Defendants may try to garner sympathy by submitting their financial condition to a jury to demonstrate their inability to pay a large punitive damages award. *See Kemezy v. Peters,* 79 F.3d 33, 36 (7th Cir. 1996). However, a defendant's failure to respond to discovery requests for evidence of defendants' financial condition is a waiver of the hardship defense to punitive damages, making any evidence of financial condition "clearly inadmissible." *See Hillard v. City of Chicago,* No. 09 C 2017, 2010 WL 1664941. At *1 (N.D. Ill. Apr. 23, 2010) (requiring plaintiffs to demand in discovery evidence of defendants' financial condition before barring defendants' claim of an inability to pay punitive damages). Moreover, it is improper to allow a defendant to plead poverty if he will be indemnified by the municipality. *See Kemezy v. Peters,* 79 F.3d at 37.

Defendants should be precluded from using financial circumstances as a defense to plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons set forth above, plaintiff, Nathaniel Pryor, respectfully asks the Court to grant plaintiff's motions *in limine*.


Dated: May 24, 2021                                   /s/   Irene K. Dymkar
                                                              Irene K. Dymkar


Irene K. Dymkar
Shamoyita M. DasGupta
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604
(312) 345-0123


## CERTIFICATE OF SERVICE

I, Irene K. Dymkar, an attorney, certify that on May 24, 2021, a copy of PLAINTIFF'S MOTIONS *IN LIMINE* was served upon the attorneys for defendants named below through the Court's electronic filing system.

John B. Murphey
Odelson, Sterk, Murphey, Grazier, McGrath, Ltd.
3318 W. 95th Street
Evergreen Park, IL 60805


Dated: May 24, 2021                                   /s/   Irene K. Dymkar
                                                              Irene K. Dymkar