UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PRYOR, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-1968 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| MICHAEL CORRIGAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### **MEMORANDUM OPINION AND ORDER**

This Court granted in part and denied in part Defendants' motion for summary judgment. *See* 3/30/21 Mem. Opin. and Order (Dckt. No. 141). Plaintiff Nathaniel Pryor has now moved for reconsideration in light of new authority from the Seventh Circuit. *See* Pl.'s Mtn. (Dckt. No. 167). The new cases don't help his cause. The motion for reconsideration is denied.

The Court assumes familiarity with its prior Opinion. *See* 3/30/21 Mem. Opin. and Order, at 2–14 (Dckt. No. 141). The punchline is that the case involves an arrest of Pryor by members of the Aurora Police Department, including officers in at least two squad cars. Two dashcams captured the encounter, and the footage was part of the summary judgment record.

The Court can see – and did see – what happened with its own eyes. Some parts of the video are susceptible to different interpretations (creating an issue of fact), but other parts are not. The Court does not have to accept a gloss on the evidence if the "videotape tells quite a different story." *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).

Basically, the police pulled over a van, and Pryor was a passenger. When the van pulled into a driveway and came to a stop, there was a hive of activity. Instead of staying put, Pryor hopped out of the vehicle, scampered down the driveway, and reached the street. Another passenger took off running, too. It was a frantic scene.

At that point, the police had probable cause to arrest Pryor. Pryor exited the vehicle and high-tailed it out of there in the midst of a traffic stop. As this Court previously explained, fleeing a lawful traffic stop constitutes resistance or obstruction of a police officer, which is a misdemeanor under Illinois law. *Id.* at 23–25; *see also* 720 ILCS 5/31-1. The police had probable cause to believe that Pryor committed a misdemeanor when he fled, and Pryor didn't wipe away the violation when he stopped scampering away. You can't undo flight.

Pryor now argues that, "[o]nce the van stopped, Mr. Pryor walked toward the police." *See* Pl.'s Mtn., at 3 (Dckt. No. 167). That theory is not consistent with the footage. The police pulled over the van on a residential street, and the van then pulled into a driveway. Pryor, at that point, scampered in a perpendicular direction to the police. That is, imagine if the police followed the van on a north-south street, heading north, and the van turned right (facing east) into a driveway. Pryor exited the vehicle and ambled down the driveway (heading west). The police came from the south, but Pryor headed west. He wasn't exactly turning himself in.

Pryor didn't get very far. When he reached the street, Pryor turned around, faced the squad cars, and put his hands up. Officer Michael Corrigan ran toward Pryor, ordered him to get down. Pryor did not comply. The officer then swept Pryor's leg and took him to the ground.

Officer Corrigan attempted to physically restrain Pryor. Along the way, the officer struck Pryor twice while he laid on the ground and then searched him. After placing him in cuffs, the officer helped him up. Later, Officer Damien Cantona searched Pryor a third time while they were in the back of a transport vehicle. Pryor was arrested, but the state later dropped the charges *nolle prosequi*.

Pryor ultimately filed a civil complaint against Officers Corrigan and Cantona, plus a number of other Aurora police officers and the City of Aurora. Pryor brought six claims: (1) false arrest; (2) excessive force; (3) illegal search; (4) battery; (5) malicious prosecution; and (6) indemnification.

The parties filed cross motions for summary judgment. *See* Pl.'s Mtn. for Summ J. (Dckt. No. 97); Defs.' Mtn. for Summ. J. (Dckt. No. 83). This Court denied Pryor's motion in its entirety. *See* 3/30/21 Mem. Opin. and Order (Dckt. No. 141). The Court granted in part and denied in part Defendants' motion. *Id.*

For present purposes, the most important rulings involve the claims of excessive force (Count II) and battery (Count IV). And this Court reached different outcomes for the tackle and the punches. For the tackle, this Court ruled that Officer Corrigan's takedown of Pryor was protected by qualified immunity. *Id.* at 26–30. For the punches, the Court ruled that there was a genuine issue of material fact about whether the officer used excessive force. *Id.* at 30–34; *id.* at 47–50 (addressing battery).

This Court granted Defendants' motion for summary judgment on the false arrest claim (Count I), because there was probable cause to arrest Pryor because he fled. *Id.* at 19–25. The Court also granted in part and denied in part Defendants' motion on the illegal search claim (Count III), holding that the claim about the third search (involving his genital area) could proceed to trial. *Id.* at 38–47.

Pryor now moves this Court to "vacate and reverse its decisions on Count I-IV due to the recent decisions by the Seventh Circuit." *See* Pl.'s Mtn., at 2 (Dckt. No. 167). That can't be what Pryor actually means. After all, this Court ruled in Pryor's favor on several claims. Specifically, this Court ruled that there was a genuine issue of material fact about the two punches and the third search, which gave rise to claims of excessive force (Count II), illegal

2

search (Count III), and battery (Count IV). Instead, this Court construes Plaintiff's motion to challenge the parts of the ruling that went against him.

As a general matter, motions for reconsideration are disfavored, and rightly so. "Federal district courts have hundreds of civil and criminal cases that require attention, and a re-do of a matter that has already received the court's attention is seldom a productive use of taxpayer resources because it places all other matters on hold." *Vogel v. McCarthy Burgess & Wolff, Inc.*, 2021 WL 5014155, at *1 (N.D. Ill. 2021) (quoting *United States v. Menominee Tribal Enter.*, 2009 WL 1373952, at *1 (E.D. Wis. 2009)). A motion for reconsideration is not an avenue to request a do-over.

But the situation is different when there is new authority. District courts are in the business of getting it right (as best they can). So, if there is new authority from the Court of Appeals that would change the outcome – before the case is over – this Court will welcome hearing it.

Pryor moves for reconsideration based on intervening case law from the Seventh Circuit. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021); *Gupta v. Melloh*, 19 F.4th 990 (7th Cir. 2021). The two cases don't change the outcome here.

The first case involved a prisoner's Eighth Amendment claim for deliberate indifference to his serious medical need. *See Stewart*, 14 F.4th at 760–62. Pryor cites *Stewart* for the proposition that "no matter how tempting it might be on summary judgment to be distracted by the sparkle of seemingly compelling facts, our assigned task is to take the facts in the light most favorable to the non-moving party." *Id.* at 760.

The Court completely agrees with that proposition. In fact, this Court said the same thing in its Opinion. "The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party." *See* 3/30/21 Mem. Opin. and Order, at 15 (Dckt. No. 141). "The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists." *Id.*

This Court put that principle into practice in its Opinion. For example, this Court ruled that there were genuine issues of material fact about whether Officer Corrigan used excessive force when he punched Pryor (twice) during the process of restraining him. *Id.* at 30–34. In particular, this Court ruled that there were genuine fact issues about whether Pryor was resisting arrest, and if so, whether the police officer used reasonable force to restrain him. *Id.*; *see also id.* at 34 ("In light of the factual dispute, there is a genuine issue of material fact about whether Pryor continued to resist Officer Corrigan, thus justifying additional force to subdue him.").

Plaintiff argues that there are "two versions of what happened when Mr. Pryor was arrested." *See* Pl.'s Mtn., at 5 (Dckt. No. 167). And Plaintiff tries to argue that this Court adopted one of them, and thus supplanted the role of the jury. "This Court, of course, saw something different in the videos." *Id.* Pryor is trying to fit a square peg in a round hole.

3

This Court's ruling about the tackle relied on undisputed facts. The videos showed the police pulling over the van. But Pryor didn't stay put. Instead, he bolted. He exited the van (while another passenger ran away, too), and scampered down the length of the driveway until he finally reached the street. The police ordered him to get on the ground, several times, but Pryor remained standing. That's when an officer forced him down. It's all on video.

None of those facts are susceptible to interpretation, gloss, or spin. The videos show what they show. And they show that Pryor left the vehicle and began a get-away. The fact that he didn't flee very far does not change an essential, indisputable fact: he fled.

Pryor argues that qualified immunity should not apply because, on the video, Pryor "can be heard plaintively asking, 'Sir, what is the problem?' over and over again, and claiming to the officer sitting on top of him that he was not resisting." *Id.* at 6. Plaintiff is switching the chronology and scrambling the ruling. This Court ruled that the officer was entitled to qualified immunity for the *tackle* – meaning the act of taking Pryor to the ground – not the punches. Statements that Pryor made *after* he was on the ground have no bearing on whether the officer had qualified immunity to *get* him on the ground.

The other case offered by Plaintiff does not change the outcome, either. In *Gupta*, a hotel employee called the police when Gupta, who was "extremely intoxicated," tried to enter the hotel. *See Gupta*, 14 F.4th at 994–95. He enjoyed local establishments a little too much, because he was too drunk to know that he was at the *wrong* hotel. When the police arrived, an officer observed his drunken state and placed him in handcuffs, without any resistance. *Id.* at 995. A second officer then arrived, and took responsibility for Gupta when the other officer left to talk with the clerk. *Id.*

The second officer wanted Gupta to go outside, but things didn't go smoothly. The officer placed his hands on Gupta's arm and pulled him forward. *Id.* at 997–98. Someway somehow, Gupta ended up on the floor, with a bloody nose and a broken vertebrae.

There was conflicting evidence about how, exactly, that injury happened. Gupta offered evidence that the officer used excessive force, but the officer testified that he used reasonable force to subdue Gupta when he was resisting. *Id.*

The Seventh Circuit ruled that there were genuine issues of material fact about whether the officer had used excessive force. "Depending on which version of the story one credits, that pull [on Gupta's arm] was either an appropriate and reasonable use of force to subdue an actively resisting suspect or was an unreasonable and excessive use of force against a passive, compliant, intoxicated suspect whom the police made vulnerable to injury by handcuffing his hands behind his back." *Id.* at 997–98; *see also id.* at 999 ("Here we have essential material facts in dispute: Gupta asserts that he was not resisting arrest and that the extent of his impairment was obvious. Melloh alleges that Gupta was resisting arrest and that he had no reason to know how unsteady he was, and thus the level of force he used to move him was reasonable in light of the circumstances.").

4

The record included video footage, but it captured only part of the scene, so it didn't "hand a slam dunk to either party." *Id.* at 998. For starters, the video camera was "positioned such that only the top of Gupta's head is visible for a good portion of the video, including the critical moment when Gupta allegedly resisted arrest and when Melloh allegedly used excessive force." *Id.* So, "[a] reasonable juror could determine any number of things from that video, including that Gupta did not resist arrest, did not stiffen and jerk backwards, and that Officer Melloh deliberately knocked Gupta to the ground and jumped on top of him." *Id.* "In short, the video is far from conclusive and reasonable jurors could certainly disagree about what it reveals about the events of the night." *Id.*

The Court of Appeals also concluded that qualified immunity didn't apply to the officer's tug, "[f]or this same reason." *Id.* at 1000. There was a disputed issue of fact about whether the officer used a disproportionate amount of physical coercion in effectuating an arrest. *Id.* Gupta was "readily succumbed to handcuffing" by the time the defendant officer arrived to the hotel. *Id.* at 1001. "Gupta did not pose a threat to the officers or others – he was handcuffed with his hands behind his back and there was no one in the immediate vicinity. There was no immediate need to move him, and no split-second judgment was required. The circumstances were not tense, uncertain, or rapidly evolving." *Id.*

The Seventh Circuit's ruling about qualified immunity rested on an important principle: the police may not rough-up an innocent, compliant, subdued person. "Our case law has long put police officers on notice that they 'do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever,' and that significant force is unreasonable after a suspect is subdued or has stopped resisting or evading arrest or is, at most, passively resisting arrest." *Id.* at 1001 (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)).

Based on the principle against using force to subdue the subdued, there was a genuine issue of material fact about whether the officer was entitled to qualified immunity. The applicability of qualified immunity depended on which version of the story is believed. More specifically, if Gupta's story was true, then the officer would not be entitled to qualified immunity because the officer pushed him without provocation when he was already shackled in handcuffs. The facts about "provocation or resistance" were up in the air, so qualified immunity could not apply without resolving the question of fact first. *Id.*

The differences between *Gupta* and the case at hand jump off the page. The entire context of the interaction was markedly different. When the officer in question tried to escort Gupta out of the hotel, he wasn't a threat to anyone. He was already handcuffed. *Id.* at 1001 ("Gupta did not pose a threat to the officers or others – he was handcuffed with his hands behind his back and there was no one in the immediate vicinity."). And he was intoxicated, too.

Here, in sharp contrast, Pryor was on the run – literally. When the police pulled over the van, Pryor didn't stay put. He left the vehicle and scampered down the driveway, fleeing the vehicle. The flight wasn't particularly speedy or graceful, but it was flight nonetheless.

When he reached the end of the driveway, Pryor stopped, turned toward the vehicles, and put his hands in the air. A police officer, meanwhile, yelled for him to get on the ground. Pryor

5

didn't. He stood there, with his hands in the air, but he didn't get on the ground. So the officer took him to the ground.

*Gupta* involved using force against someone who was already subdued. But the case at hand involves using force against someone to *get* him subdued. The longstanding principle against using force on an already-restrained person does not apply because Pryor was not yet restrained.

The situation in *Gupta* was orderly and serene compared to the situation faced by the officers here. In *Gupta*, one officer transferred custody of Gupta – who was already handcuffed – to a second officer. Things were, by any objective measure, under control. Gupta "had quickly and readily succumbed to handcuffing," and he "did not pose a threat to the officers or others." *Id.* "There was no immediate need to move him, and no split-second judgment was required. The circumstances were not tense, uncertain, or rapidly evolving." *Id.*

The officers in the case at hand faced a different situation, as anyone can see by watching the videos. In the midst of a traffic stop, two men bolted from the van, including Pryor, and ran in different directions. Pryor scrambled down the driveway before stopping at the street.

True, Pryor stopped in his tracks. But he wasn't restrained, either. Officer Corrigan did not have physical control over him as he ran toward Pryor. And Pryor did not get on the ground when the officer directed him to get on the ground. It was fast-paced by any measure.

Qualified immunity reflects the practical realities of boots-on-the-ground, in-the-moment police work. Police officers on the beat do not have the luxury of sitting back in one's office – with a coffee cup in hand – watching the video frame-by-frame, and parsing how someone else should have responded. Law enforcement often confront dangerous situations with their hearts pumping, blood flowing, and adrenaline racing through their veins.

The need to make split-second decisions in the heat of the moment in a volatile environment means that police officers receive some latitude. They don't have the luxury of time, or the benefit of video review, or the assurance of personal safety. And they don't exactly have Westlaw at their fingertips.

Police officers receive qualified immunity unless they (1) violated a federal statutory or constitutional right; and (2) the unlawfulness of the conduct was "clearly established" at the time. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012). To be "clearly established," there does not need to be a case directly on point, but it does need to be "beyond debate." *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (citation omitted).

Even if, for the sake of argument, Pryor was right that the officer used excessive force by tackling him, the use of excessive force would not be enough to overcome qualified immunity. Pryor also would need to come forward with case law showing that the unlawfulness of the conduct was "clearly established" at the time of the incident. And that's where Pryor falls short.

To survive summary judgment on the claims about the tackle, Pryor would need to come forward with case law showing that the takedown violated clearly established precedent. By way of illustration (only), Pryor would need to show that the police cannot take someone to the ground in the process of restraining him, or cannot use force against a person with his hands in the air. Or, Pryor would need to come forward with some other principle that fits, at an appropriate level of specificity.

Pryor musters no such authority. He has not come forward with any case law establishing that the officer violated clearly established case law when he took Pryor to the ground. *Gupta* does not fit the bill. *Gupta* does not prohibit the use of force against a person who was unrestrained. And without clearly established case law, there is no basis to reconsider this Court's ruling.

The motion for reconsideration also advances an argument about the malicious prosecution claim. Pryor recasts his federal malicious prosecution claim as an illegal pretrial detention claim under the Fourth Amendment. *See* Pl.'s Mtn. for Reconsideration, at 7 (Dckt. No. 167). His characterization is correct under Seventh Circuit precedent. *See Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) ("[W]hen a plaintiff alleges that officials held him in custody before trial without justification, malicious prosecution is the wrong characterization. There is only a Fourth Amendment claim – the absence of probable cause that would justify the detention. And we recently reiterated that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention.") (cleaned up).

But Pryor's illegal pretrial detention claim still fails. He rests his motion to reconsider on Officer Corrigan's lack of probable cause for the arrest. But as explained above, the officer had probable cause to arrest Pryor because he fled from a traffic stop. So the illegal pretrial detention claim necessarily fails.

The rest of the motion for reconsideration is a rehash of arguments made in Pryor's summary judgment briefs. This Court already considered them, and Pryor offers no reason to reconsider them.

In the alternative, Pryor argues that the Court should enter final judgment on the claims that it dismissed. Specifically, Pryor seeks the entry of final judgment on Count I (false arrest), Count II in part (excessive force), Count III in part (illegal search), Count IV in part (battery), and Count V (malicious prosecution).

Under Rule 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *See* Fed. R. Civ. P. 54(b). "Rule 54(b) allows appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court, where 'separate' means having minimal factual overlap." *Toyo Tire Corp. v. Atturo Tire Corp.*, 2021 WL 1853310, at *2 (N.D. Ill. 2021) (quoting *Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 940 (7th Cir. 2005)); *see Domanus v. Locke Lord LLP*, 847 F.3d 469, 477 (7th Cir. 2017) ("It is not enough to resolve something that is designated as a separate claim, if other aspects of the case involve the

7

same underlying subject matter. The claim resolved must dispose of a distinct issue; only then will there be 'no just reason for delay' in the appellate process.").

The surviving claims in this Court have substantial factual overlap with the claims that the Court dismissed. Indeed, they address the exact same set of facts. Nothing would be gained – and much would be lost – from blow-by-blow appellate review. *See Rodriguez v. Rooney*, 2010 WL 3239446, at *2 (N.D. Ill. 2010) ("The purpose behind the separate and distinct requirement is to 'spare the court of appeals from having to keep relearning the facts of a case on successive appeals.'") (quoting *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 702 (7th Cir. 1984)).

Motion denied.

Date:  May 20, 2022

Steven C. Seeger
United States District Judge

8