UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PRYOR, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17 C 1968 |
| | ) |
| MICHAEL CORRIGAN, NATHANIEL ISAAK, | ) Judge Steven C. Seeger |
| GREGORY CHRISTOFFEL, DAMIEN | ) |
| CANTONA, RONALD F. McNEFF, RICHARD | ) |
| CORNFORTH, DANNY RIOS, MATTHEW | ) |
| BONNIE, RICKEY AHLGREN, THOMAS | ) |
| HINTERLONG, MARK WEEKS, UNKNOWN | ) |
| OFFICERS OF THE AURORA POLICE | ) |
| DEPARTMENT, and CITY OF AURORA, | ) |
| ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTIONS *IN LIMINE* #18 - 25**

Plaintiff, Nathaniel Pryor, by and through his attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, hereby moves this Court for an order granting his Motions *in Limine* #18 - 25. Plaintiff seeks to avoid as many evidentiary issues and interruptions at trial as possible. Upon continued review of the file and discussions with defense counsel about the law and facts of this case, plaintiff seeks to alert the Court to additional issues which will need to be resolved, either before or at trial. In support of plaintiff's motions, he states as follows:

**Plaintiff's Motion *in Limine* #18: To bar all evidence, testimony, and arguments regarding the Court's prior decision that there was probable cause for the arrest, that the force used in the tackle was reasonable, and that the first two searches of plaintiff's genitals were reasonable.**

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and

Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

If the Court states, and allows defendants to argue, with specificity, that there was probable cause for the arrest, that the force used in the tackle was reasonable, and that the first two searches of plaintiff's genitals were reasonable, that would be unduly prejudicial to plaintiff. The Court would be placing its thumb on the scale in favor of defendants. The jury may believe that if there was probable cause for the arrest for resisting arrest, then everything that followed was permissible. If the Court states there was probable cause for an arrest, but does not mention the charge, then the jury may falsely think or speculate that this was a drug or a gun arrest. If the Court even mentions probable cause for the arrest, which is a legal term, then it would have to instruct the jury on what the definition of probable cause for an arrest is.

Also, the Court found that plaintiff was resisting arrest because he left the van in which he was a passenger and went to the end of the driveway to stand in front of the dash camera in Officer Nathaniel Isaak's car. Doc. 141 at 24-25. The Court did *not* make a finding as a matter of law that plaintiff was resisting arrest at any point *after* he put his hands in the air. Whether he struggled while on the ground or not is for the jury to decide. If the Court says to the jury that it found probable cause for resisting arrest, the jury may then be confused and think that the Court found that plaintiff resisted arrest *while he was on the ground,* and that would have a negative impact on his claim that there was excessive force. The Court would in effect be directing a verdict to defendant Corrigan by its comments.

Similarly, if the jury learns that the force used in the tackle was reasonable, then it may believe that the force used in the punches was also reasonable. Also, the jury may believe that if

2

the first two searches of plaintiff's genitals were reasonable, then there was no harm in a third search.

Plaintiff contends that the Court should neutrally inform the jurors that they should not speculate about what happened with the arrest or the incarceration, or the tackle, or the first two searches of plaintiff's genital area. That is not what they are here to decide.

Plaintiff asks the Court to bar all evidence, testimony, and arguments regarding the Court's prior decision that there was probable cause for the arrest, that the force used in the tackle was reasonable, and that the first two searches of plaintiff's genitals were reasonable.

**Plaintiff's Motion *in Limine* #19: To allow plaintiff to describe the tackle and the first two searches and his reaction to them.**

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

Plaintiff was punched twice after he had been tackled and had landed hard on the cement. Defendant Michael Corrigan got on his back, and while straddled on this back, punched him hard twice. It was in the context of being thrown to the ground and plaintiff having his face in the slush, that he was punched. The jury should be allowed to hear the whole story of what happened to understand the impact of what defendant Corrigan did.

With regard to the search, the jury should hear what happened in context. Plaintiff had his crotch searched two times before the third search by defendant Damien Cantona. The third time he was searched, the search was more intense, in part because Cantona squeezed his testicles,

3

claiming to have found something. The experience was aggravated, because plaintiff had already been searched twice and no contraband and no gun was found. Plaintiff should be allowed to describe the first two searches and his reaction to the third search.

Plaintiff should be allowed to describe the tackle and the first two searches and his reaction to them.

**Plaintiff's Motion *in Limine* #20: To bar all evidence, testimony, and arguments that plaintiff was obstructing the police in addition to resisting arrest.**

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

Resisting arrest and obstructing a peace officer are two separate crimes. *See People v. Baskerville*, 2012 IL 111056 ¶ ¶ 16-29. The Illinois Supreme Court in *Baskerville* described the differences as well as the elements of each. Most important, the Court stated: "This interpretation is also consistent with our obligation to avoid a construction which renders a part of the statute superfluous or redundant, and instead presume that each part of the statute has meaning." *Id*. at ¶ 25. This Court cited *Baskerville* in a case it decided, and determined that the word "rule" and the word "bylaw" in a statute each had separate meanings. *See Cage v. Harper*, No. 17-CV-7621, 2021 WL 3022316, at *16-17 (N.D. Ill. July 16, 2021), aff'd, 42 F.4th 734 (7th Cir. 2022).

Of note, this clarification in the case law of the differences between resisting arrest and obstructing a peace officer was adopted and codified in the changes to 720 ILCS 5/31-1 that took effect on January 1, 2023. Compare Exhibit B (720 ILCS 5/31-1, eff. 1/1/23), with Exhibit C

4

(720 ILCS 5/31-1, eff. 1/1/14-12/31/22). In other words the understanding by the courts of these two crimes as distinct (the case law) is now codified and separated in the statute into 1) resisting arrest, and 2) obstructing the performance by one known to the person to be a peace officer of any authorized act within his or her official capacity.

The case at hand is about resisting arrest, not obstructing a peace officer. In defendant Corrigan's response to plaintiff's Requests to Admit, he admitted that the only crime committed was resisting arrest, to wit:

> 60) NATHANIEL PRYOR was charged with resisting arrest, pursuant to 720 ILCS 5/31-1 on March 23, 2015.
>
> 62) NATHANIEL PRYOR was not arrested on March 23, 2015 for any charge other than resisting arrest.
>
> 64) The individual defendant responding to this Request to Admit [Corrigan] is not claiming that he/she had probable cause to arrest NATHANIEL PRYOR on March 23, 2015, for any charge other than resisting arrest.

Doc. 99-6 (Defendants' responses to Requests to Admit).

In the criminal complaint filed in this case, plaintiff was charged with resisting arrest, that is:

> [K]nowingly resisted the performance of Inv M. Corrigan of an authorized act within his official capacity **being arrested of Nathaniel Pryor [sic]**, knowing Inv Corrigan to be a peace officer engaged in the execution of his official duties . . .(emphasis added).

Doc. 99-1 (Criminal complaint).

The crime of resisting arrest pertains to interaction between defendant Corrigan and plaintiff. The crime of obstructing a peace officer would imply that plaintiff impeded some activity of the other officers, which did not occur and for which he was not charged. Because of the admissions and the case law, defendant should be barred from presenting any evidence, testimony, or arguments that plaintiff was obstructing the police in addition to resisting arrest.

5

**Plaintiff's Motion *in Limine* #21: To bar all evidence, testimony, and arguments that any of the reasons Corrigan gave to the Office of Professional Standards as to why he tackled plaintiff were legitimate reasons to punch him**.

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

Corrigan gave the following reasons to the Office of Professional Standards as to why he tackled plaintiff to the ground:

> There was, uh, a couple of things I was takin' into consideration. Um, one the sub-officer-subject, uh, relationship. He was considerably larger than I was. Um, the weather conditions at the time. It was obviously snowy, cold outside. **Um, it was an adverse area. Uh, members of our unit had recently been shot at. Not even just a little big [bit]] prior to this incident happening. It's an unfriendly neighborhood. My reason for stopping the vehicle was obviously for, uh, a narcotics type activity. Um, Mr. Pryor has priors for, uh, offenses involving firearms.** (Emphasis added).

Exhibit D (Corrigan statement to Ofc. Prof. Standards) at 7. Corrigan should be barred from using these reasons, or similar reasons, to justify striking plaintiff.

Defendants have agreed to plaintiff's Motion *in Limine* #5, to be barred from saying the area where the arrest occurred is a high crime, drug, or gang area (Doc. 152 at 4), so defendants should not be allowed to say that "it was an adverse area" or that "it is an unfriendly neighborhood." Also, it would be grossly prejudicial (see Fed.R.Evid. 403) for defendants to say that "members of our unit had recently been shot at."

For the same reasons plaintiff argues in Motion *in Limine* #1 (Doc. 149 at 1-4) that defendants should not be allowed to testify about an alleged tip from an unidentified informant or a surveillance that yielded no fruit, or that stopping the van was, in defense counsel's words, "a

6

drug raid fraught with danger," defendant Corrigan should not be allowed to testify that "[m]y reason for stopping the vehicle was obviously for, uh, a narcotics type activity."

Finally, plaintiff has no convictions for the unauthorized use of a firearm. Given the circumstances of the traffic stop, it was unreasonable for defendant Corrigan to believe that plaintiff had a firearm.

Defendant Corrigan should be barred from presenting all evidence, testimony, and arguments that any of the reasons he gave to the Office of Professional Standards as to why he tackled plaintiff were legitimate reasons to punch him.

**Plaintiff's Motion *in Limine* #22: To bar all evidence, testimony, and arguments of defendant Corrigan's prejudicial hearsay statements on the dash camera video (Plaintiff's Trial Exhibit #2), in which he tries to rationalize his misconduct.**

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

As stated as part of the proposed pre-trial order, plaintiff seeks to use at trial the video produced by the dash camera mounted on the vehicle defendant Corrigan and his partner, Gregory Christoffel, were riding in, from the beginning of the video until 00:04:25 on the meter. Plaintiff seeks to use the audio just until 00:03:30, when Corrigan starts making self-serving, hearsay statements. See Doc. 154-3 (Plaintiff's Trial Exhibit #2). Attached hereto as Exhibit E is a transcript of the audio on that video.[1]

---

[1] Plaintiff asks that this transcript be marked Plaintiff's Trial Exhibit 2C. Plaintiff seeks to use this transcript at trial only through 00:03:30 on the meter of the video and intends to redact all text after that time.

Plaintiff asked defendants when preparing the pre-trial order in 2021, and several times since, to state exactly what parts of the two dash camera videos they intend to introduce. For the first time, on January 20, 2023, Mr. O'Donnell gave a rough estimate of the extent of the videos defendants may want to use at trial. It is clear now that defendants intend to use Corrigan's self-serving, hearsay statements.

Corrigan's self-serving comments after the fact are hearsay, that is, out-of-court statements a party seeks to offer in evidence "to prove the truth of the matter asserted in the statement." Fed.R.Evid. 801(c). They are inadmissible. Fed.R.Evid. 802. An example of these inadmissible statements are:

> Because I'm being decent with you. There is no reason for you to get out of this car and move away the way you did. There's just no reason at all. When the police stop you, right, you stay in the car. I don't know what you got when you come out of this car, if you got a gun. I don't know that. I don't know that. I got a family. You know what? I'd like to go home tonight.

Exhibit E (Plaintiff's Trial Exhibit #2B - transcript of audio), at meter time 6:30.

These statements do not come under any hearsay exception. They are not excited utterances (see Fed.R.Evid. 803(2)) ("a statement relating to a startling event or condition"), because the event or condition has already occurred. They do not show defendant's "*then-existing* state of mind" (see Fed.R.Evid. 803(3)), because the event related has already occurred. In fact, the evidence rule specifically excludes "a statement of memory or belief to prove the fact remembered or believed." Id.

Defendants seek to instruct the jury erroneously on the law. It is not illegal for a person to exit a vehicle when the vehicle is stopped by the police. It is thus an incorrect statement of the law to say, "There is no reason for you to get out of this car" or "When the police stop you, right,

8

you stay in the car." Corrigan may believe, erroneously, that it is a crime for a person to step out of a vehicle after a traffic stop, but it would be an error for him to instruct the jury through the video statements that it is. It is true that if the police have probable cause to detain someone, that person cannot flee the scene. There is a significant difference, however, between getting out of a vehicle and fleeing the scene.

Corrigan's statement, "I'm being decent with you," after he has punched plaintiff twice is self-serving and inadmissible. His statement, "I don't know what you got when you come out of this car, if you got a gun" is prejudicial because there is no basis for Corrigan to believe that plaintiff has a gun. His statement, "I don't know that. I got a family," plays to the jury's sympathy and impermissibly asks the jury to make a decision based on emotion, not the facts. "Evidence is unfairly prejudicial where 'its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Barber v. City of Chicago*, 725 F.3d 702, 704 (7th Cir. 2013), quoting *Thompson v. City of Chicago*, 472 F.2d 444, 456-57 (7th Cir. 2006). The Court should avoid "a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Id.,* at 714.

All audio statements in which defendant Corrigan tries to justify after the fact his misconduct are inadmissible. Plaintiff asks the Court to bar all the audio statements from the Corrigan/Christoffel dash camera video (Plaintiff's Trial Exhibit #2) after the 00:03:30 meter reading.

**Plaintiff's Motion *in Limine* #23: To bar all evidence, testimony, and arguments of Nathaniel Isaak's irrelevant and prejudicial hearsay statements on the audio associated with his dash camera video (Plaintiff's Trial Exhibit #1).**

Plaintiff hereby certifies that after the hearing with the Court on January 17, 2023, plaintiff's attorney, Irene K. Dymkar, contacted defense counsel on January 18, 2023, to further discuss legal issues. Defense counsel Drew O'Donnell was not available to discuss this motion *in limine* until January 20, 2023. Defense counsel then agreed to participate in an additional discussion on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. At this point, defendants oppose this motion.

As stated as part of the proposed pre-trial order, plaintiff seeks to bar defendants from using any of the audio associated with the dash camera video from Isaak's vehicle. The vehicle did not move after it was parked in front of 1123 Fenton, in Aurora, Illinois, so the *video* itself shows the interaction between plaintiff and defendant Corrigan. The *audio*, however, was created from a microphone attached to Isaak's clothing and Isaak is running through back yards. His comments and commands pertain to his interaction with Raymond Johnson, who fled the scene, not to Nathaniel Pryor, who stayed on the scene. See Doc. 154-3 (Plaintiff's Trial Exhibit #2).

Attached hereto as Exhibit F is a transcript of what Isaak is saying to Johnson in the back yards and down the street. Plaintiff is not offering this transcript into evidence, but is merely providing it to the Court for reference and to aid in the Court's determination of this issue. The statements made by Isaak to Johnson to "stop" and to "get down" are irrelevant and prejudicial. Plaintiff is not responsible for the conduct of Raymond Johnson. The statements are not "of consequence in determining the action." Fed.R.Evid. 401(b). Moreover, the statements would "confus[e] the issues, [and] mislead[] the jury," (Fed.R.Evid. 403) by justifying Corrigan and Cantona's actions in light of what Johnson did, that is, run away. Moreover, the statements are hearsay. Fed.R.Evid. 801.

10

For the above reasons, Nathaniel Isaak's irrelevant and prejudicial hearsay statements on the audio associated with his dash camera video (Plaintiff's Trial Exhibit #1) should be barred.

**Plaintiff's Motion *in Limine* #24: To bar all evidence, testimony, and arguments disclosing to the jury that officers at the scene were assigned to the gang unit, the drug unit, the gun unit, the Special Operations Unit, or any other unit which implies that this case is about a stop and an arrest for drugs or guns.**

Plaintiff hereby certifies that defense counsel agreed to participate in an additional discussion regarding motions *in limine* on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. Plaintiff discussed defendant's answer to plaintiff's Motion *in Limine* #3 and whether that extended to the defendants agreeing not to say that they were in the gang unit, drug unit, gun unit, and Special Operations Unit. At this point, defendants oppose this motion.

Defendants state in their answer to plaintiff's Motion *in Limine* #3 (Doc. 152 at 3) that they do not intend to testify or imply that plaintiff is a drug dealer. This is appropriate, because the only indication of drugs in plaintiff's past appears to be cannabis convictions in the 1990's.

Defendants also agree that they will not testify that the arrest occurred in a high crime, drug, or gang area, nor imply that plaintiff is in a gang. Doc. 152 at 4.

Because this case has nothing to do with gang activity, drugs, or guns, the Court should also bar defendant officers from testifying they are in a gang unit, a drug unit, a gun unit, the Special Operations Unit, and any other unit which implies that this case is about a stop and an arrest for drugs or guns, because of its limited relevance and unfair prejudicial effect. *See, e.g., Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *12 (N.D. Ill. Jan. 31, 2017); *Gonzalez v. Olsen*, No. 11 C 8356, 2015 WL 3671641, at *3 (N.D. Ill. June 12, 2015); *Case v. Town of Cicero,* 2013 WL 5645780, at *6; *Smith v. Hunt*, No. 08 C 6982, 2011 WL 9737, at *3 (N.D. Ill. Jan. 3, 2011).

11

**Plaintiff's Motion *in Limine* #25: To bar all evidence, testimony, and arguments regarding the criminal histories of the other individuals in the van, Raymond Johnson and Terrence Mading.**

Plaintiff hereby certifies that defense counsel agreed to participate in an additional discussion regarding motions *in limine* on January 23, 2023, which was held on Zoom, with plaintiff's attorneys, Irene K. Dymkar and Shamoyita M. DasGupta, and defendants' attorneys, Darcy Proctor and Drew O'Donnell, present. This motion was discussed. At this point, defendants oppose this motion.

During their conference of January 23, 2023, plaintiff's counsel asked defense counsel whether they would be trying to present testimony or evidence regarding the criminal histories, if any, of Raymond Johnson and Terrence Mading, who were in the van with plaintiff when they were all going to the gym. Their criminal histories were never disclosed by defendants in discovery. Defense counsel stated that they were in fact considering presenting evidence of Johnson and Mading's criminal histories.

Raymond Johnson and Terrence Mading are not testifying at this trial. It would be unduly prejudicial for defendants to testify about their criminal records without disclosing that history and to circumvent Fed.R.Evid. 609, in effect, impeaching a witness who is not present. Furthermore, defendants should not be allowed to gratuitously testify that they treated plaintiff the way they did because of the company he keeps.

Whether Johnson or Mading had a criminal history is not "of consequence in determining [this] action." It is therefore not relevant. Fed.R.Evid. 401(b). Moreover, any probative value is substantially outweighed by a danger of unfair prejudice to plaintiff, of confusing the issues, and of misleading the jury. Even if the information were relevant, it should be excluded. See Fed.R.Evid. 403.

Plaintiff asks the Court to bar all evidence, testimony, and arguments regarding the criminal histories of the other individuals in the van, Raymond Johnson and Terrence Mading.

## CONCLUSION

For the reasons set forth above, plaintiff, Nathaniel Pryor, respectfully asks the Court to grant plaintiff's Motions *in Limine* #18-25.

Dated: January 23, 2023                                      /s/   Irene K. Dymkar
                                                                            Irene K. Dymkar


Irene K. Dymkar
Shamoyita M. DasGupta
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604
(312) 345-0123


## CERTIFICATE OF SERVICE

I, Irene K. Dymkar, an attorney, certify that on January 23, 2023, a copy of PLAINTIFF'S MOTIONS *IN LIMINE* #18-25.was served upon the attorneys for defendants named below through the Court's electronic filing system.

| | |
|---|---|
| Darcy L. Proctor | John M. O'Driscoll |
| Andrew J. O'Donnell | Tressler LLP |
| Tressler LLP | 550 E. Boughton Road, Suite 250 |
| 233 S. Wacker Drive, 61st Floor | Bolingbrook, IL 60440 |
| Chicago, IL 60606 | |

Dated: January 23, 2023                                      /s/   Irene K. Dymkar
                                                                            Irene K. Dymkar