## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL PRYOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-1968 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MICHAEL CORRIGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>ORDER</u>

The Court makes the following rulings on the 39 motions *in limine* filed by the parties. The rulings cover 29 motions *in limine* filed by Plaintiff Nathaniel Pryor (Dckt. Nos. 149, 172, 197, 207, 209), and 10 motions *in limine* filed by Defendants Michael Corrigan, Damien Cantona, and the City of Aurora (Dckt. Nos. 151, 171).

### Legal Standard

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing," for example, they make no provision "for the power of a judge to hear a motion *in limine*.").

"Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Regardless of the Court's initial ruling on a motion *in limine*, the Court may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006).

A motion *in limine* "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). It "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.*

So, from the get-go, this Court underscores that the following rulings are preliminary. This Court might learn more as the case unfolds, and that additional information may change this Court's assessment of the admissibility of the evidence. But in the meantime, this Court makes the following rulings so that the parties can plan ahead and prepare for trial accordingly.

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). In short, Rule 401 defines relevance broadly. *See United States v. Boswell*, 772 F.3d 469, 475 (7th Cir. 2014). Rule 402 "provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros*, 668 F.3d at 907.

The Court, however, may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403. When considering Rule 403, courts use "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *Morgan v. City of Chicago*, 822 F.3d 317, 339 (7th Cir. 2016) (citation omitted).

## Procedural History

Plaintiff Nathaniel Pryor filed a six-count complaint against a collection of officers and the City of Aurora. The claims involved a traffic stop and an ensuing physical encounter with the officers.

After discovery, the parties filed cross motions for summary judgment. This Court denied Plaintiff's motion in its entirety, and granted in part and denied in part Defendants' motion. *See* 3/30/21 Mem. Opin. & Order (Dckt. No. 141).

Specifically, this Court granted Defendants' motion for summary judgment on the claims for false arrest (Count I) and malicious prosecution (Count V). This Court granted Defendants' motion for summary judgment in part on the claim for excessive force (Count II), illegal search (Count III), and battery (Count IV).

Specifically, this Court ruled that Pryor's excessive force claim (Count II) against Officer Corrigan can proceed to trial with respect to the two punches, and the illegal search claim (Count III) can proceed as it relates to Officer Cantona's search of Pryor. This Court also ruled that the battery claim (Count IV) against Officers Corrigan and Cantona, as well as the City of Aurora (under *respondeat superior*), can proceed to trial with respect to both of those incidents (*i.e.,* the

two punches by Officer Corrigan, and the third search by Officer Cantona). Count VI (the indemnification count against the City of Aurora) remained in the case, too.

In sum, trial will involve a few claims. Count II is an excessive force claim against Officer Corrigan (only) for the punches while Pryor was on the ground. Count III is an illegal search claim against Officer Cantona (only) for allegedly abusing Pryor by squeezing his groin area during a later search. Count IV is a battery claim against both officers and the City of Aurora.

## Governing Law

Before diving into the 39 motions *in limine*, the Court offers a basic overview of the governing law that applies to the remaining claims, meaning (1) excessive force; (2) illegal search; and (3) battery. The elements of the claims provide the backdrop for the rulings that follow.

The first remaining claim is an excessive force claim against Officer Corrigan for the two punches. An excessive force claim "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The inquiry involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *See Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted).

The "'reasonableness' inquiry in an excessive force case is an objective one: the question

is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "It requires a fact-intensive inquiry into the totality of the circumstances, including the severity of the crime, potential threats to the safety of officers or bystanders, and whether the plaintiff was actively resisting arrest." *See Shirley v. Rabensteine*, 2023 WL 129432, at *2 (7th Cir. 2023).

"The actual officer's subjective beliefs and motivations are irrelevant." *See Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. The standard is objective, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 395.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97 (internal quotation marks and citations omitted).

The second claim is that Officer Cantona performed an unreasonable search in violation of the Fourth Amendment. A search of an arrestee's body during a search incident to arrest is "unreasonable" in violation of the Fourth Amendment when it is conducted in a manner that is "extreme or patently abusive." *Campbell v. Miller*, 499 F.3d 711, 717 (7th Cir. 2007) (quoting *United States v. Robinson*, 414 U.S. 218, 236 (1973)); *see also Mary Beth G. v. City of*

*Chicago*, 723 F.2d 1263, 1270–73 (7th Cir. 1983) (holding that a search incident to arrest may not be extreme or abusive). Here, Pryor claims that Officer Cantona squeezed his testicles during the search.

The third and final remaining claim (apart from indemnification, meaning Count VI) is battery. Under Illinois law, a person "commits a battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *See* 720 ILCS 5/12-3(a).

In addition, the Illinois Tort Immunity Act protects public employees from tort liability unless their conduct was "willful" or "wanton." *See* 745 ILCS 10/2–202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *See id.* at 10/1-210.

With that backdrop in mind, the Court turns to the 35 motions *in limine*.

**Plaintiff's Motion *in Limine* #1 – Motion to bar all evidence, testimony, and arguments regarding the surveillance of Raymond Johnson before Plaintiff's arrest.**

Plaintiff's motion *in limine* no. 1 to bar all evidence, testimony, and arguments about the surveillance of Raymond Johnson before Plaintiff's arrest is hereby granted in part and denied in part.

The motion is about the surveillance of Johnson, based on an anonymous tip, before the traffic stop. Basically, the tip led to surveillance of Johnson's home, which led the police to follow the van containing Plaintiff. *See* Pl.'s Mtn., at 2 (Dckt. No. 149).

"According to Aurora officers Damien Cantona and David Tellner, an unnamed tipster with unknown reliability told Cantona that a man named Raymond Johnsons [sic] would be cooking cocaine at a house on Kane Street." *Id.* Officers Cantona and Tellner then conducted surveillance, which "amounted to watching a van pull out of a driveway at 1020 Kane Street in Aurora, Illinois and drive away, with unknown occupants." *Id.*

At times, Plaintiff seems to argue that evidence about the surveillance is inadmissible because, in the end, there was no drug activity. Plaintiff points out that there was "absolutely no observation of any criminal activity or even any suspicious activity." *Id.* And the identity of the informant "was never disclosed to plaintiff" (presumably referring to discovery). *Id.*

Plaintiff points to a statement in Defendants' summary judgment brief, saying that the interaction was a "drug raid fraught with danger." *Id.* (quoting Defendants' Summ. J. Brief (Dckt. No. 86, at 4 of 18)). But according to Plaintiff, there was "no evidence to support this statement." *Id.*

Overall, Plaintiff argues that any reference to the surveillance of Raymond Johnson would be "speculative and grossly prejudicial to plaintiff." *Id.* at 1. Plaintiff "vigorously claims he was not committing any illegal activity prior to the traffic stop and his arrest." *Id.* at 3. In addition, Plaintiff argues that the tipster's statement is hearsay, and is "not relevant." *Id.* at 4.

Defendants oppose the motion, arguing that evidence of the police surveillance of Raymond Johnson is relevant because "[t]he jury is going to need context" for the traffic stop. *See* Defs.' Resp., at 1 (Dckt. No. 152). "The jury is going to see someone dart out from the vehicle and run away, which is what started the sequence of events." *Id.*

The motion *in limine* is hereby granted in part and denied in part. The jury can hear that the police were following the van as part of surveillance for possible drug-related activity.

Basically, information about the surveillance is relevant for at least two reasons. First, the evidence provides important context for the traffic stop. Second, the suspicion of drug-related activity also has a bearing on the reasonableness of the use of force. It is part of the totality of the circumstances – it is one factor, among many, that the jury may consider when assessing whether Officer Corrigan's use of force was reasonable. The probative value is not substantially outweighed by the risk of unfair prejudice, but as explained below, this Court will place a few limits on the evidence. *See* Fed. R. Evid. 403.

First, evidence about the surveillance will provide background about the traffic stop, and will help the jury understand what they see and hear on the videos. The backstory will help them understand what unfolded. Without some context, the jury might not understand why this level of police presence was used for a minor traffic violation.

Juries need to understand what they see and hear. For that simple reason, the Seventh Circuit has recognized a broad standard of relevance that includes background information and other evidence that provides context. "[O]ne measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012).

Evidence is relevant if it sets the scene, fills gaps, or sheds light on the broader story. Relevance is not limited to the elements of the claim, or to disputed facts. "Even where evidence is not directly related to a disputed fact, it may be relevant when it provides background information." *See Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) (holding that putting conduct "in context . . . made it relevant"). In fact, Rule 401 makes clear that "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is

universally offered and admitted as an aid to understanding." *See* Fed. R. Evid. 401 advisory committee's note.

Here, the jury will watch dashcam videos from the incident. The videos show the officers trailing the van, pulling it over, and pulling up to the scene. At that point, two people – including Plaintiff – got out of the van (Plaintiff ambled out, and Johnson bolted). The take-down and the punches ensued. The jury will decide whether the punches were a reasonable use of force.

The events leading up to the traffic stop – that is, the police surveillance of the van – offer important context. They help to explain why the officers were following the van. The backstory explains why a number of officers in several police cars took part in an otherwise ordinary traffic stop.

Without some background, the jury will have a hard time understanding why the traffic stop played out as it did. That is, why were multiple squad cars following this van, only to pull it over for failing to signal within 100 feet of a stop sign? And why the foot chase?

Viewed in isolation, the dashcam videos don't show what most people would expect to see when someone is pulled over for a minor traffic infraction, either before or after the stop. The videos make more sense when you have the broader context about the police surveillance.

The background also helps to explain – from Officer Corrigan's perspective – why the individuals in the van may have sprinted from the vehicle during the traffic stop. The surveillance also helps to contextualize the reaction of the officers to the fleeing occupants, including why the officers immediately gave chase and ordered them to the ground.

It would leave a chronological gap and a conceptual hole in the story if the jury watched the videos without some explanation for how the whole thing got started. The jury does not have

to watch the videos in a vacuum, or in the dark. So, an explanation of the police surveillance is relevant, and admissible, background material.

Second, the suspicion of drug-related activity also sheds light on the reasonableness of the use of force.

The Seventh Circuit has recognized that a wide range of facts are potentially relevant when a jury evaluates the reasonableness of the use of force. The reasonableness of the use of force depends on the totality of the circumstances. *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012) ("An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest."); *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) ("This standard requires that a fact finder analyze whether the officer's actions *are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident*, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight.") (emphasis added); *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) ("[T]he reasonableness of a seizure depends on the totality of the circumstances."). A totality-of-the-circumstances analysis requires taking "the whole picture . . . into account." *See United States v. Cortez*, 449 U.S. 411, 417 (1981).

When evaluating whether the use of force was objectively reasonable, the "standard is fact-intensive, asking whether each use of force was reasonable under the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *See Turner v. City of Champaign*, 979 F.3d 563, 567

(7th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861–62 (7th Cir. 2010).

"In addition, [the jury may] consider 'whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties.'" *See Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021) (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)); *see also Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (noting that the jury may "consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties") (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)). An officer need not "conclusively establish" that the plaintiff committed a crime when weighing the need to use force. *See Mendez v. City of Chicago*, 2022 WL 4466235, at *15 (N.D. Ill. 2022) (Aspen, J.).

Simply put, "[i]n order to assess objective reasonableness, the [jury] *must consider all the circumstances*," including the *Graham* factors. *See Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (emphasis added). That is, the jury can consider just about any information known to the officer at the time of the use of force.

The Seventh Circuit's Pattern Jury Instructions reflect the fact that a wide range of information is relevant in an excessive force case. Relevant facts include, among possible others, "the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any efforts made by the defendant to temper or limit the amount of force, the severity of the crime at issue, the threat reasonably perceived by the officer(s), and whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing." *See* Seventh Cir. Pattern Jury Instruction 7.10.

The jury will "decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer *facing the same circumstances that Defendant faced*." *Id.* (emphasis added); *see also Common*, 661 F.3d at 943 ("A jury must stand in the shoes of the officer and judge the reasonableness of his actions *based on the information he possessed in responding to that situation*.") (emphasis added). "This perspective is critical." *See Smith*, 10 F.4th at 736 (quoting *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020)). "[A] court must consider the amount and quality of the information known to the officer at the time." *Id.* (alteration in original) (quoting *Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018)).

So, the range of potentially relevant information is expansive. The jury can consider the totality of the circumstances when deciding whether the use of force was reasonable. The jury needs to answer the question: would a reasonable officer in Corrigan's shoes – given everything that he knew at the time – have used this level of force?

Information about the police surveillance is part of the totality of the circumstances that Corrigan faced when he encountered Pryor. Not all traffic stops are created equal. A traffic stop where the police suspect drug-related criminal conduct is not the same as a traffic stop where the police harbor no such suspicions. They do not pose the same risks. And it affects how a reasonable officer would respond.

Here, a number of the *Graham* factors come into play. The background about the drug surveillance sheds light on a number of topics, from a number of different angles.

For starters, the tip and the surveillance created a suspicion that the occupants of the van were engaged in criminal activity. Whether a person is "suspected of committing a crime" is relevant when assessing the reasonableness of the force. *See Dawson*, 803 F.3d at 833; *see also Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021); *Padula v. Leimbach*, 656 F.3d 595, 602 (7th

Cir. 2011); *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010); *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). The Seventh Circuit has recognized that reality for decades.

Plaintiff contends that a suspicion of criminal activity "is not enough to transfer that suspicion to anyone who leaves that property." *See* Pl.'s Mtn., at 3 (Dckt. No. 149); *see also* Pl.'s Resp., at 12 (Dckt. No. 157). Plaintiff points to *United States v. Bohman*, 683 F.3d 861 (7th Cir. 2012), but it is not on point. *Bohman* held that the police may not "stop a vehicle only because it emerged from a site suspected of drug activity." *Id.* at 862; *see also id.* at 864. *Bohman* addressed the validity of a traffic stop, which is not at issue here. *Bohman* did not walk back the longstanding principle that a suspicion of criminal activity is relevant when evaluating the reasonableness of force in an excessive force case.[1]

In addition, the background of the drug-related surveillance provides important context for the flight. The police followed a van based on a tip about drug-related activity. And when the van came to a stop, two occupants hightailed it out of there. Flight might be evidence of wrongdoing or a guilty mind. *See, e.g.*, *People v. Tompkins*, 2021 WL 4270081, at *6 (Ill. App. Ct. 2021) (noting that "defendant's flight from the police is circumstantial evidence 'tending to show consciousness of guilt'") (quoting *People v. Harris*, 288 N.E.2d 385, 387 (Ill. 1972)).

---

[1] *Bohman* is different for another reason, above and beyond the fact that it did not address relevant factors in an excessive force case. In *Bohman*, the police had suspicion about a particular *place*, but not the vehicle in question. *See Bohman*, 683 F.3d at 865 (noting "the lack of *particular* suspicion about the car actually stopped") (emphasis in original). That's much different than the case at hand. Here, the police followed this particular van because of specific, articulable information about that vehicle. The police received a tip that someone named Raymond Johnson would be "cooking crack cocaine at a home on Kane Street," and that Johnson "would be in a conversion van." *See* Defs.' Statement of Facts, at ¶¶ 3–4 (Dckt. No. 84). And even then, the Seventh Circuit did not declare that leaving a place of suspected drug activity was *irrelevant*. The Court of Appeals simply ruled that it was not *enough*.

Based on the surveillance, a reasonable officer could have viewed the flight as an indication that the occupants were engaged in criminal activity, above and beyond the traffic violation. A jury can consider whether a person is "actively resisting arrest or attempting to evade arrest by flight" when evaluating the reasonableness of the use of force. *See Turner*, 979 at 567. Under the circumstances, a reasonable officer potentially could have viewed the flight as an attempt to resist apprehension and avoid arrest for drug-related criminality. And if so, that fact could come into play when applying force to restrain the individual who was, only moments before, scampering away.

True, in the end, the police did not find any drugs on Pryor when they searched him. And he was not charged with a drug-related offense. Still, when evaluating the use of force, the focal point is what the officer knew at the time of the force, not what became known with the benefit of hindsight. *See Common*, 661 F.3d at 943; *Graham*, 490 U.S. at 395 (adopting an objective standard that is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

What matters is what an officer knew before exercising force, not after. For that reason, Plaintiff cannot get into the results of the search, meaning whether the police *in fact* found drugs. In a supplemental filing (Dckt. No. 210), Plaintiff stated that he wants to inform the jury that the police did not find drugs on Pryor, or on his companions, or in the van itself. But that's the view in hindsight – the punches came before the search. The reasonability of the punches does not depend on whether the police actually found drugs after the fact.[2]

---

[2] That said, at the final pretrial conference, the Court raised the possibility of instructing the jury that Pryor was not arrested for, or charged with, any drug offense. The Court will renew that discussion at the next installment of the final pretrial conference.

The drug-related surveillance speaks to another one of the *Graham* factors, the "severity of the crime." *See Turner*, 979 F.3d at 567. Officer Corrigan did not simply see someone run from a vehicle during a traffic stop. He saw someone run from a vehicle *that was potentially involved in the drug trade* during a traffic stop. The suspicion of illegal drug activity could affect a reasonable officer's perception of the severity of the situation.

To get an accurate picture, the jury needs to know more than simply the fact that the officers suspected criminal activity. The jury needs to know the *type* of criminal activity. Not all crimes are created equal. And not all suspected crimes would provoke the same use of force by the police. The fact that the suspected criminal activity here involved drugs as opposed to something else (*e.g.,* an active shooter situation) matters. Without knowing the nature of the suspected crime, the jury's imagination might take off and go in unpredictable directions.

The suspicion of drug-related activity could affect the perception of a threat, too. A reasonable officer might conclude that there is a correlation between drugs and weapons. After all, the Seventh Circuit has recognized that connection, too. "Our court has recognized that, given the dangers of drug trafficking, guns and drugs often go hand in hand." *See United States v. Jones*, 900 F.3d 440, 449 (7th Cir. 2018); *United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016) ("[B]y the time Agent Reynolds encountered Thompson, he clearly had reason to believe that Thompson was participating in a drug trafficking operation. Based on that belief, it was reasonable for Agent Reynolds to suspect that Thompson was armed because guns are known tools of the drug trade, as our cases have recognized."); *United States v. Gulley*, 722 F.3d 901, 908 (7th Cir. 2013) ("[I]t is widely known that guns and drugs go hand in hand."); *United States v. Perez*, 581 F.3d 539, 547 (7th Cir. 2009) ("We have consistently held that weapons are

'recognized tools of the drug trade' . . . .") (citation omitted).  If a reasonable jurist could see a connection between drugs and guns, a reasonable officer could too.

The suspicion of illicit drug activity has a bearing on possibility of weapons.  And the possibility of weapons has a bearing on the potential for violence.  All else being equal, a reasonable officer might believe that someone who is potentially involved in the drug trade poses a greater risk than someone who is not.

Maybe reasonable minds could disagree about the correlation between drug-related activity (one the one hand) and the possession of weapons and the threat of potential violence (on the other).  But the key point is simple.  At the very least, a reasonable jury could find that a reasonable officer could conclude that there is a connection between drugs and a potential threat, and could use force accordingly.

That said, the Court does not see a need to belabor the point.  The parties can present evidence that the police received an anonymous tip (including the content known by Officer Corrigan), and that they were following the vehicle as part of drug-related surveillance.  And the jury can hear about what Officer Corrigan knew before he struck Pryor.  But the jury may not need to hear much else.

For example, the Court wants to avoid a sideshow about Johnson and his alleged involvement with cocaine.  The parties should avoid a mini-trial about the details of the surveillance.  And Defendants should not make any suggestion that Plaintiff deserved any force used against him because he was a criminal who was involved in drug-related activity.

Importantly, Defendants should not suggest or argue to the jury that Pryor was, in fact, engaged in drug-related illegality.  This Court is not aware of any such evidence (apart from the

possible possession of money). Defendants should not paint Plaintiff as a drug dealer, or anything of that sort.

Here, the risks of unfair prejudice tug in both directions. Defendants should not suggest that Plaintiff was involved in the drug trade, and should not suggest that the use of force was acceptable because he was *in fact* selling drugs. And on the flipside, Plaintiff should not argue that the traffic stop, the physical interaction, or the arrest were unlawful because he was not *in fact* involved in the drug trade.

In sum, the Court concludes that evidence about the surveillance for possible drug-related activity is relevant, and has substantial probative value. It provides useful background, and it sheds light on the use of force. The probative value of that evidence is not substantially outweighed by the risk of unfair prejudice, especially after placing limitations on the evidence. *See* Fed. R. Evid. 403. The Court can discuss other potential limitations on the evidence with the parties, including a limiting instruction, so that the jury stays on target.

One final point. Plaintiff's hearsay objection is misplaced. *See* Pl.'s Mtn., at 4 (Dckt. No. 149). Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." *See* Fed. R. Evid. 801(c)(2). The tipster's statement is not offered for its truth. The point is that the officers heard a tip, not that the tip was *true*.

**Plaintiff's Motion *in Limine* #2 – Motion to admit all evidence, testimony, and arguments that officers told Defendant Isaak to "find probable cause" to pull the van over.**

Plaintiff's motion *in limine* no. 2 to allow evidence, testimony, and arguments about a statement allegedly made by officers to Defendant Isaak is hereby denied.

Plaintiff's motion *in limine* no. 2 comes into play based on the Court's ruling on Plaintiff's motion *in limine* no. 1. Plaintiff argues that "[i]f information about the surveillance comes in over plaintiff's strong objection," meaning that the Court denies Plaintiff's motion *in*

17

*limine* no. 1, "then the jury should be informed that the stop was a pretext." *See* Pl.'s Mtn., at 4 (Dckt. No. 149).

Plaintiff seeks to introduce evidence that "Officer Nathaniel Isaak testified at deposition that defendant Cantona wanted him to follow the van in which plaintiff was a passenger 'to find my probable cause to stop the vehicle.'" *Id.* (quoting Isaak Dep., at 95:19-20 (Dckt. No. 99-15)). In Plaintiff's view, evidence that the stop was pretextual is relevant because "Aurora police conducted themselves as if this was a dangerous drug bust, when there was no proof whatsoever that any drug crime had been committed or was being committed." *Id.* at 5. The pretextual basis for the stop would give the jury "some context on why the stop actually took place." *Id.* In other words, if evidence about the surveillance is relevant and admissible to provide context, then evidence about the motivation behind the stop is, too.

Defendants oppose the motion, noting that pretextual stops are "a perfectly legitimate police investigative technique." *See* Defs.' Resp., at 2 (Dckt. No. 152). "Assuming there is probable cause to make the traffic stop, the police officers' 'actual motivation for making a stop is irrelevant to the reasonableness of the stop for purposes of the Fourth Amendment.'" *Id.* (quoting *Smith v. City of Chicago*, 2019 WL 2287988, at *7 (N.D. Ill. 2019)). So, Defendants believe that introducing evidence of the pretextual nature of the stop would mislead the jury into believing that the officers pulled over the van illegally.

The motion *in limine* is denied. The parties should not get into whether the reason for the traffic stop was pretextual. The lawfulness of a traffic stop does not depend on the subjective motivations of the police officer. *See Whren v. United States*, 517 U.S. 806, 811 (1996) (rejecting the notion that "an officer's motive invalidates objectively justifiable behavior"). "Subjective intentions play no role" when deciding the lawfulness of a stop under the Fourth

Amendment. *Id.* at 813; *see also United States v. Cole*, 21 F.4th 421, 428 n.1 (7th Cir. 2021) (en banc) ("We, of course, do not consider Trooper Chapman's subjective motivations for deciding to conduct a traffic stop."); *United States v. Chang*, 999 F.3d 1059, 1066 (7th Cir. 2021) ("[A] court need not delve into the subjective motivations of the officer who effectuated the detention."); *United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014) ("The reasonableness of a search does not depend on the officer's subjective motivations; the inquiry is, of course, *objective*.") (emphasis in original).

It could confuse and mislead the jury to present evidence about the subjective motivations behind the traffic stop. The traffic stop was not unlawful even if a drug-related investigation – not a traffic violation – motivated the officers to stop the van. What matters is that the officers had probable cause to stop the van for a traffic violation (and here, they did). Planting seeds in the jury's mind about the true motivations for the stop could distract their attention, confuse the issues, and mislead them about what they were supposed to decide.

On a related note, the parties also should not get into whether the stop was justified – that is, whether the police had enough information to believe that the van was involved in drug-related criminality. *See* Pl.'s Mtn., at 5 (Dckt. No. 149) ("Aurora police conducted themselves as if this was a dangerous drug bust, when there was *no proof* whatsoever that any drug crime had been committed or was being committed.") (emphasis added). At summary judgment, this Court already decided that the police had probable cause for the traffic stop. *See* 3/30/21 Mem. Opin. & Order, at 22–23 (Dckt. No. 141).

The parties can present evidence about what the police knew at the time, because that knowledge was part of the "totality of the circumstances" that led to the use of force. *See Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020). But the parties should not invite the

jury to second-guess whether the police should have pulled the van over, or whether the police had enough evidence to support a belief that the occupants were engaged in illegal activity. Trial is about whether the police used excessive force, not whether the police should have pulled over the van in the first place.

**Plaintiff's Motion *in Limine* #3 – Motion to bar all evidence, testimony, and arguments that Defendants believed that Plaintiff is a drug dealer, or that he had money on his person when he was searched.**

Plaintiff's motion *in limine* no. 3 to bar evidence, testimony, and arguments that Defendants believed Plaintiff is a drug dealer, or that he had money on his person when he was searched, is hereby granted in part.

Plaintiff raised the issue in light of the deposition testimony of the officers. Defendants Corrigan and Cantona testified that they believed that Plaintiff is a drug dealer. *See* Pl.'s Mtn., at 5 (Dckt. No. 149). In particular, "Defendant Corrigan testified that he believed plaintiff had been arrested in the past for alleged drug crimes." *Id.* (citing Corrigan Dep., at 116:3-8, 183:4-17 (Dckt. No. 99-14)).

Defendants respond that they "have no intention of testifying 'as to their speculative belief that Plaintiff was a drug dealer.'" *See* Defs.' Resp., at 3 (Dckt. No. 152). So, the Court deems Plaintiff's motion to exclude evidence, testimony, and arguments that Defendants believed that Plaintiff is a drug dealer to be unopposed. That portion of Plaintiff's motion *in limine* no. 3 is hereby granted. Defendants may not introduce evidence, testimony, or arguments indicating that they believed that Plaintiff is a drug dealer.

Again, this ruling does not prohibit Defendants from testifying that they saw Plaintiff exit the vehicle, and that they had reason to believe that the vehicle was connected to drug making.

The information that the police knew before stopping the vehicle is relevant because it provides important context about what took place.

At first, Defendants argued that Defendant "Corrigan is entitled to testify that he knew Plaintiff because of a prior arrest." *Id.* If Officer Corrigan knew Plaintiff from a prior arrest, and recognized him at the time of the incident, that prior history could have a bearing on the reasonableness of the use of force. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("Moreover, Czarnecki was familiar with Cyrus and was aware of his mental illness; he testified at his deposition that Cyrus had never acted violently toward him.").

However, at the final pretrial conference on January 24, 2023, defense counsel confirmed that they do not intend to argue that Officer Corrigan knew Plaintiff before the day in question. Defense counsel repeated the point in a subsequent filing. Defendants have "agreed that Defendant Corrigan will not testify to his prior knowledge of the Plaintiff." *See* Defs.' Resp. to Pl.'s Additional Mtn., at 4 (Dckt. No. 205). So, the Court deems this portion of the motion *in limine* to be unopposed as well.

Plaintiff's motion *in limine* no. 3 also seeks to exclude evidence, testimony, and arguments that "[w]hen defendant Corrigan searched plaintiff, he found money on his person." *See* Pl.'s Mtn., at 6 (Dckt. No. 149). Plaintiff contends that introducing evidence that he was found with money might be used to support the "inference that the money on his person was 'drug money.'" *Id.* According to Plaintiff, there is no proof that any money found on Plaintiff was drug money, so introducing evidence of the money would be unduly prejudicial. *Id.*

Defendants oppose this part of motion *in limine* no. 3. They believe that Defendant "Corrigan is . . . entitled to testify as to the results of his search." *See* Defs.' Resp., at 3 (Dckt. No. 152).

The Court excludes evidence that the officers located money on Plaintiff's person during the search. The trial will be limited to claims of excessive force, illegal search, and battery. The trial is not about whether Plaintiff was, or was not, actually engaged in drug-related activity. So, Defendants should not elicit evidence suggesting that Plaintiff was involved in manufacturing or distributing drugs, including the possession of cash.

That said, Plaintiff must not open the door, either. If Plaintiff or Plaintiff's counsel makes a statement suggesting that Plaintiff was doing nothing wrong on the day in question, that assertion would open the door to countervailing evidence (if any).

Putting all of that together, the parties should not offer evidence that Plaintiff was, or was not, engaged in drug-related criminal activity on the day in question. The Court directs the parties to steer clear of that topic. *See* Fed. R. Evid. 403.

**Plaintiff's Motion *in Limine* #4 – Motion to bar all evidence, testimony, and arguments that Plaintiff was a member of a gang or on a gang database.**

Plaintiff's motion *in limine* no. 4 to bar evidence, testimony, and arguments that Plaintiff was a member of a gang or on a gang database is hereby granted.

Once again, Plaintiff raised the issue based on the deposition of the officers. Defendants Corrigan and Cantona "made reference to plaintiff allegedly being a member of a gang, or being on a gang database." *See* Pl.'s Mtn., at 6 (Dckt. No. 149). Plaintiff argues that "[i]t would be unduly prejudicial to permit defendants to testify as to their unsubstantiated belief that plaintiff was a member of a gang, which might cause the jury to make an inference that plaintiff was committing a crime on the date of the incident, or is an inherently violent person and this somehow justified defendants' behavior towards him." *Id.* at 7.

Defendants do not oppose the motion. *See* Defs.' Resp., at 4 (Dckt. No. 152). So, the Court grants Plaintiff's motion *in limine* no. 4. Defendants may not introduce evidence, testimony, or arguments that Plaintiff was a member of a gang or on a gang database.

**Plaintiff's Motion *in Limine* #5 – Motion to bar all evidence, testimony, and arguments that implies that the arrest took place in a high crime, drug, or gang area.**

Plaintiff's motion *in limine* no. 5 to bar evidence, testimony, and arguments implying that the arrest took place in a high crime, gang, or drug area is hereby granted.

Plaintiff argues that Defendant Corrigan testified at deposition "that he knew the general area where the incident took place to be a high crime area." *See* Pl.'s Mtn., at 8 (Dckt. No. 149). Plaintiff believes that labeling the area of the arrest "is vastly more prejudicial than probative of any legitimate issue in this trial." *Id.*

Defendants do not oppose the motion. *See* Defs.' Resp., at 4 (Dckt. No. 152). So, the Court grants Plaintiff's motion *in limine* no. 5. Defendants may not introduce evidence, testimony, or arguments implying that the arrest took place in a high crime, gang, or drug area.[3]

**Plaintiff's Motion *in Limine* #6 – Motion to bar all evidence, testimony, and arguments regarding Plaintiff's past convictions and arrests.**

Plaintiff's motion *in limine* no. 6 to bar evidence, testimony, and arguments regarding Plaintiff's past convictions and arrests is hereby granted in part and denied in part.

The Court begins with Plaintiff's prior convictions. Plaintiff seeks to bar Defendants from impeaching him with proof of three prior convictions: (1) a 2011 conviction for unlawful restraint; (2) a 2014 conviction for aggravated battery; and (3) a 2016 conviction for domestic battery. *See* Pl.'s Mtn., at 9 (Dckt. No. 149).

---

[3] Maybe the surroundings could be relevant in some future case. After all, the standard is the "totality of the circumstances," not "the totality of the circumstances *except where you are*."

Defendants respond that they "will not be seeking to impeach Plaintiff" with his 2011 conviction for unlawful restraint. *See* Defs.' Resubmission, at 2 (Dckt. No. 171); Pl.'s Resubmission, at 1 (Dckt. No. 172) (resubmitting motion *in limine* no. 6 after Defendants represented that they would not seek to impeach Pryor with his unlawful restraint conviction). Defendants acknowledge that because this conviction is more than 10 years old, it "is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *See* Fed. R. Evid. 609(b)(1). Defendants "do not contend that evidence of this conviction past the 10-year benchmark satisfies the admissibility requirements of Rule 609(b)." *See* Defs.' Resubmission, at 1–2 (Dckt. No. 171).

So, the Court deems motion *in limine* no. 6 to be unopposed to the extent that Defendants seek to impeach Plaintiff with his prior conviction for unlawful restraint in 2011. The motion is granted in part on that basis. Defendants may not introduce evidence, testimony, or arguments about Plaintiff's 2011 conviction for unlawful restraint.

However, Defendants do seek to introduce evidence of Plaintiff's prior convictions for aggravated battery in 2014 and domestic battery in 2016. *See* Defs.' Resp., at 4–8 (Dckt. No. 152). Plaintiff moves to bar Defendants from raising these convictions "because the undue prejudice outweighs the relevance." *See* Pl.'s Resubmission, at 2 (Dckt. No. 172).

Plaintiff argues that "the crimes of aggravated battery and domestic battery are not indicative of truthfulness," and so are not probative of Plaintiff's credibility. *Id.* at 3. At the same time, both convictions "involve[d] physical altercations" like "the excessive force allegation here." *Id.* So, there is a risk that the jury would conflate Plaintiff's past conduct with his conduct during the traffic stop and arrest. "The unavoidable and impermissible inference that would be made by the jury here is that plaintiff has a propensity for violence." *Id.* at 4.

24

Plaintiff also argues that "[h]is testimony is critically important to the case" and so "[h]is credibility is central." *Id.* Additionally, admitting "testimony about domestic violence is likely to elicit . . . an emotional reaction in the jury" and prejudice Plaintiff. *Id.*

Defendants argue that impeaching Plaintiff with his prior felony convictions is fair game because "[c]redibilty is an essential issue in this case." *See* Defs.' Resp., at 5 (Dckt. No. 152). Defendants believe that the Court could limit any unfair prejudice to Plaintiff from introducing the convictions "by way of a limiting instruction, or by directing that the specifics of the felony convictions not be shared with the jury." *Id.*

Under Rule 609(a) of the Federal Rules of Evidence, evidence of a prior conviction that "was punishable . . . by imprisonment for more than one year . . . must be admitted, subject to Rule 403, in a civil case" to "attack[] a witness's character for truthfulness." *See* Fed. R. Evid. 609(a). So, the Court's analysis comes down to Rule 403, which permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *See* Fed. R. Evid. 403.

The Seventh Circuit has identified five considerations for weighing probative value against prejudicial effect under Rule 403 (through Rule 609(a)): "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004); *see also Jones v. City of Chicago*, 2017 WL 413613, at *9 (N.D. Ill. 2017) (St. Eve, J.) (applying the *Montgomery* factors in a section 1983 case).

The Seventh Circuit has cautioned district courts that "[p]resenting a [section] 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013); *see also Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) (courts must be "careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him"); *Jones v. Sheahan*, 2003 WL 21654279, at *2 (N.D. Ill. 2003) (evidence of the plaintiff's murder conviction might lead a jury to deny him an award "'not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question'") (quoting *Earl v. Denny's, Inc.*, 2002 WL 31819021, at *3 (N.D. Ill. 2002)).

Here, *Montgomery*'s first factor – the impeachment value of the prior crimes – cuts in favor of excluding Plaintiff's prior convictions. Both of Plaintiff's felony convictions are for battery, which is a crime that isn't very probative of Pryor's character for truthfulness. Certain crimes "involving fraud or deceit" can "cast doubt on a witness's reliability for telling the truth." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (en banc). However, "assault, or battery normally do not." *Id.*; *see also Jones*, 2017 WL 413613, at *9 (noting that murder and certain other violent crimes are not "particularly indicative of untruthfulness"). Slugging someone doesn't tell you much about whether the slugger tells the truth.

Battery isn't a crime that tells the jury much about Pryor's capacity for truth telling or deception. So, Pryor's convictions do not add much to the "probative value" side of the ledger under Rule 403. *See* Fed. R. Evid. 403.

26

The third factor – the similarity between past crimes and the conduct at issue – also weighs against admission. When it comes to the third factor, courts in this district are split on whether it comes into play at all in a civil case. *Compare Owens v. Ellison*, 2017 WL 1151046, at *3 (N.D. Ill. 2017) ("The third factor is not relevant in civil cases."), *and Lyles v. Gambino*, 2019 WL 5654277, at *4 (N.D. Ill. 2019) ("[T]he third factor does not apply to civil cases."), *with Jones*, 2017 WL 413613, at *9 (applying the third factor); *Patterson v. City of Chicago*, 2017 WL 770991, at *9 (N.D. Ill. 2017) (same); *Martin v. City of Chicago*, 2017 WL 2908770, at *3 (N.D. Ill. 2017) (same).

That said, the courts that *have* applied the third factor recognize that it is "less important in the context of a § 1983 lawsuit than in a criminal case." *Jones*, 2017 WL 413613, at *10 n.2. Because a section 1983 plaintiff is not on trial for a criminal offense, "the effect of prejudice based on the jury associating his prior crime with his conduct relevant to this case is lower than in a prosecution." *Id.* Even so, the threat of an impermissible propensity inference that animates the third factor remains in a section 1983 case to the extent that there exists "a risk the jury could conflate [the plaintiff's] past conduct with his conduct at issue in this case." *Id.*; *see also Patterson*, 2017 WL 770991, at *9 ("The more similar a past crime is to a witness's alleged criminal activity in the current case, the greater the probability for unfair prejudice based on jurors making an unwarranted propensity inference.").

That risk is present here. Pryor's battery convictions are similar to the underlying conduct at issue: whether Pryor was violent or resisting arrest. When evaluating Pryor's excessive force claim against Corrigan, the jury must decide whether Corrigan's use of force was necessary to get Pryor under control. Part of that evaluation will require the jury to determine whether, and if so, how much, Pryor was resisting arrest. If Pryor's convictions are admitted,

there's a chance that the jury will view him as a violent person, and thereby conclude that Corrigan was justified in using a higher level of force to subdue him. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997) (noting that similarity between the current conduct and past crimes increases "the possibility of the jury's inferring guilt on a ground not permissible under Rule 404(b)").

And even more to the point, battery is directly in play in this case. Pryor is alleging that he was the *victim* of battery when he was punched by Corrigan and searched by Cantona. His prior felony convictions are similar to the issues before the jury, favoring exclusion.

If Plaintiff's battery convictions are introduced, there is a risk that the jury will think Plaintiff is a batterer, so it's fair if he got battered too. In other words, the jury may view the convictions through the lens of "what goes around comes around."

The remaining *Montgomery* factors favor admitting Pryor's convictions. The second factor (proximity in time) moves the needle toward admission, but only slightly. Pryor's convictions – in 2014 and 2016 – are close in time to the conduct at issue here in March 2015. At the same time, if the convictions aren't especially probative of Pryor's character for truthfulness, then even convictions close in time don't add much for the jury.

The fourth factor (the importance of Pryor's testimony) and the fifth factor (the importance of his credibility) strongly weigh in favor of admission. Pryor admits that his testimony will be "critically important" to the jury and that "[h]is credibility is central." *See* Pl.'s Mtn., at 10–11 (Dckt. No. 149). And Pryor is right on that front. He is "a key witness to his own alleged beating and the jury will be required to determine whether it finds Plaintiff's version of the facts more plausible than Defendant's version." *Owens*, 2017 WL 1151046, at *3.

28

His testimony will probably be less important on the excessive force claim, because the jury will be able to watch the videos. (They don't show everything, and his testimony will shed some light. But the jury will have something else to go on.) *See Buchanan v. McCann*, 2012 WL 1987917, at *1 (N.D. Ill. 2012) ("Plaintiff correctly observes that his case does not rest entirely on his credibility alone . . . . Nevertheless, Plaintiff's testimony will be critical to the jury's comprehension and evaluation of the evidence.").

But his testimony will be very important on the claim about the illegal search. He has nothing to offer except his word, and it is his word against the word of Officer Cantona. His testimony and credibility are the whole ballgame. *See, e.g.*, *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (emphasizing that under the fourth and fifth *Montgomery* factors, "the defendant's testimony and the credibility issue [were] both critical to the outcome of this case because defendant and the officers offered conflicting accounts of the events leading to defendant's arrest"); *United States v. Gant*, 396 F.3d 906, 910 (7th Cir. 2005) (finding that the district court did not abuse its discretion in admitting a prior conviction where plaintiff's testimony "directly contradicted the testimony of government witnesses").

Three factors weigh in favor of admission and two weigh against it. There is probative value to the fact that Pryor has two close-in-time felony convictions, especially given the centrality of his testimony and credibility at trial. But that probative value does not extend to the violent nature of his convictions, which is not itself probative of truthfulness and otherwise lends itself to prejudice given the conduct at issue in this case.

On balance, the Court concludes that this is an appropriate case for "'sanitization' of prior-crimes evidence used to impeach." *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009). Many courts have allowed the jury to hear the *fact* of a felony conviction, without

hearing the *nature* of the felony convictions (*i.e.*, the nature of the crime). *See Owens*, 2017 WL 1151046, at *4 (citing *Schmude* and sanitizing plaintiff's criminal record, allowing defendant to introduce only the fact that plaintiff was a convicted felon); *Smith v. Nurse*, 2016 WL 4539698, at *4 (N.D. Ill. 2016) (same); *Jones*, 2017 WL 413613, at *10 (same, allowing defendant to impeach by introducing only plaintiff's convicted felon status and the date of his conviction). This "compromise of admitting a sanitized version of the crimes to lessen [the] prejudice – referring only to [an individual's] incarceration for felonies – is permissible and often preferred." *Miller v. Gonzales,* 746 F. App'x 537, 540 (7th Cir. 2018) (citing *Old Chief v. United States,* 519 U.S. 172, 174 (1997)); *see also Schmude*, 556 F.3d at 627.

The Court therefore grants in part and denies in part Plaintiff's motion *in limine*. Evidence of Pryor's 2014 and 2016 convictions – meaning that he was convicted of a felony, twice – are admissible under Rule 609(a)(1)(A). But the information should be limited and sanitized to reduce the risk of prejudice.

Defendants may impeach Pryor by introducing the fact – but not the nature – of his two felony convictions. Defendants may introduce that Pryor is a convicted felon and the dates of his convictions. But they may not identify his crimes of conviction (*i.e.*, battery), length of sentences, or the facts underlying the convictions.

If Defendants decide to impeach Plaintiff on this basis, the Court will provide a limiting instruction to the jury explaining the proper use of prior convictions for impeachment at trial. *See* Seventh Circuit Pattern Civil Jury Instructions 1.15 ("You have heard evidence that [*Name*] has been convicted of a crime. You may consider this evidence only in deciding whether [*Name's*] testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose.").

That said, it is conceivable that Pryor or his counsel could open the door. For example, if Pryor testifies that he has never been involved in violence, or that he has no propensity for violence, or that he has led a completely clean life, or the like, then his prior battery convictions would become relevant. Statements or arguments that generally depict Pryor as a non-violent, law-abiding person would open the door to contrary evidence of criminality. So, depending on Pryor's testimony at trial, it is possible that these convictions could come out during impeachment.

The Court will take up that issue later, as appropriate. When Pryor is on the witness stand, Plaintiff's counsel should be mindful of the need to avoid opening the door. If counsel wants to keep it out, keep the door closed.

Next, the Court turns to Plaintiff's prior arrests. Plaintiff seeks to exclude evidence of his prior arrest record as unduly prejudicial. *See* Pl.'s Resubmission, at 5–6 (Dckt. No. 172). For their part, Defendants state that they "are not seeking to introduce old arrest records." *See* Defs.' Resp., at 7 (Dckt. No. 152).

So, the Court deems motion *in limine* no. 6 unopposed to the extent Defendants seek to impeach Plaintiff with his prior arrests. The motion is granted on that basis. Defendants may not introduce evidence, testimony, or arguments regarding Plaintiff's prior arrests, meaning any arrests before the day in question.

However, Defendants intend to discuss the arrest in this case. "Causation of Plaintiff's emotional distress is at issue. Defendants are entitled to cross-examine Plaintiff on other contemporaneous stressors (the consequences flowing from a lawful arrest) as well as other causes of Plaintiff's claimed long-term emotional distress (incarceration about a year after this

incident; having spent 10 of the last 16 years in prison)." *See* Defs.' Resp., at 7–8 (Dckt. No. 152).

The Court views this argument as equivalent to Defendants' motion *in limine* no. 3, which seeks to permit cross-examination concerning Plaintiff's claimed emotional distress damages. The Court will address that motion below. For now, it's enough to say that Defendants may not introduce evidence, testimony, or arguments regarding Plaintiff's prior arrests (for other incidents).

**Plaintiff's Motion *in Limine* #7 – Motion to bar all evidence, testimony, and arguments as to dismissed Defendants and dismissed claims.**

Plaintiff's motion *in limine* no. 7 to bar evidence, testimony, and arguments regarding dismissed Defendants and dismissed claims is hereby granted in part.

Plaintiff argues that "[i]t would unduly prejudice plaintiff for the jury to be told or to hear that certain claims were dismissed or that certain officers who were once parties have now been dismissed." *See* Pl.'s Mtn., at 13 (Dckt. No. 149). "The jury should not be misled into believing that because claims were dismissed against certain officers, the remaining claims against the remaining officers are not viable." *Id.*

Defendants partially oppose Plaintiff's motion *in limine* no. 7. Defendants state that they "do not plan to introduce any evidence relative to all of the other officers who were sued by Plaintiff and who have since been dismissed (everybody except Corrigan and Cantona)." *See* Defs.' Resp., at 8 (Dckt. No. 152). Defendants contend that the jury does not have to know that certain "claims were 'dismissed' before trial; but the jury needs to understand that . . . particular actions by Corrigan [*i.e.*, his takedown of Pryor] have been determined by this Court to have been lawful." *Id.*

The Court rules as follows. The jury should not hear that Plaintiff brought claims against other officers who are no longer in the case, or that this Court dismissed other claims. That information could create confusion, and invite the jury to speculate about the reasons for the dismissals. The jury should stick to the claims in the case, not the claims that are no longer in the case.

The parties should be prepared to discuss what, if anything, to tell the jury about this Court's prior rulings. The Court is inclined to tell the jury that they need to decide "X," and do not need to decide "Y."

For example, the Court is inclined to tell the jury that they need to decide whether the officer used excessive force when Pryor was on the ground (*i.e.*, the punches), but not whether the officer used excessive force when Pryor was taken to the ground (*i.e.*, the tackle). Also, the jury should know that they do not need to decide the lawfulness of the traffic stop.

At the final pretrial conference, the Court discussed this issue with counsel in greater detail. Counsel agreed that the jury does not need to decide a number of issues, including (1) whether the traffic stop was lawful; (2) whether the tackle of Plaintiff by Officer Corrigan was excessive; (3) whether the police had probable cause to arrest Plaintiff; and (4) whether the searches of Plaintiff by Officer Corrigan (but not the third search by Officer Cantona, which covered Plaintiff's groin area) was unreasonable.[4]

---

[4] As this Court understands the alleged facts, Officer Corrigan performed two body searches on Plaintiff. Those searches will not be at issue during the trial, meaning that they do not give rise to a claim before the jury. According to Plaintiff, Officer Cantona conducted an inappropriate search of his groin area. That search by Officer Cantona is the subject of the unreasonable search claim. The Court invites the parties to offer any correction or clarification about the alleged facts. The Court flags the point because the Court said it a little differently at the final pretrial conference. At that hearing, the Court referred to the "first two alleged searches of Mr. Pryor's groin area by Officer Cantona." The Court wants clarification on whether Officer Cantona performed more than one search of Plaintiff's groin area, and if so, whether Plaintiff's claim covers more than one search.

The Court is inclined to tell the jury that they do not need to decide any of those issues, and thus take them off the table. The Court invites the parties to refine or supplement that list.

**Plaintiff's Motion *in Limine* #8 – Motion to permit Plaintiff to introduce the dashcam video from Officer Isaak's squad car from the beginning until 00:04:45 with the audio of Officer Isaak redacted, and to introduce the dashcam video from Officer Christoffel's squad car from the beginning until 00:04:25 with part of Defendant Corrigan's audio redacted.**

Plaintiff's motion *in limine* no. 8 to introduce redacted portions of the dash camera videos is hereby granted in part and denied in part.

Plaintiff seeks to introduce portions of two videos from the dashcams of two police cars (one vehicle was driven by Officer Isaak, and the other was driven by Officer Christoffel with Defendant Corrigan as a passenger). *See* Pl.'s Mtn., at 13–16 (Dckt. No. 149).

The parties agree that the jury should see the videos. But they disagree about how much of the videos the jury should see. And they disagree about the audio.

The first issue is the starting point of the videos. Plaintiff contends that both videos should be played from the beginning. *Id.* at 13.

Plaintiff argues that the jury should be able to see more than simply the portions of the videos with the two punches. *Id.* "If the Court required the parties to only play the recording of the incident starting from the moment of the two punches, that would be confusing to the jury." *Id.* According to Plaintiff, "[t]he videos should be played from the beginning to give the jury some context." *Id.* at 14.

In their initial filing, Defendants agreed that the audio and the video should "be played in their entirety at the option of the respective counsel in order to present their respective cases." *See* Defs.' Resp., at 8 (Dckt. No. 152).

But in their most recent filing, Defendants seem to walk it back. Defendants "request that the Isaak video be limited to the stating [sic] point of one minute four second[s] (00.01.04.)

to one minute thirty-seven seconds (00.01.37), which shows Corrigan's two strikes, the only claims at issue in this case." *See* Defs.' Resp. to Pl.'s Additional Mtn., at 5 (Dckt. No. 205).

The Court agrees with Plaintiff. The jury needs to see the beginning of the videos to provide the complete context. The early portions of the videos set the stage and provide important context for what unfolded. So, as Plaintiff requested, the Court will allow any party to play the videos from the beginning.

The second issue is the ending point. Plaintiff believes that only some of the footage is relevant. Specifically, Plaintiff seeks to end the footage from Officer Corrigan's squad car (driven by Officer Christoffel) at 00:04:25, and seeks to end the footage from Officer Isaak's squad car at 00:04:45. *Id.* at 13. That stopping point would cut the videos several minutes after the punches, before Officer Corrigan helped Plaintiff get off the ground and on his feet.

This Court sees no reason to draw that dividing line. As Defendants point out, the subsequent conversation between Plaintiff and the officers sheds light on whether Plaintiff suffered an injury. *See* Defs.' Resp., at 9 (Dckt. No. 152). It sheds light on state of mind and malice, too, which comes into play because Plaintiff is seeking punitive damages. This Court is amenable to the parties playing later portions of the video.

Later, in motion *in limine* no. 22, Plaintiff makes additional arguments about the admissibility of the later colloquy between Plaintiff and Officer Corrigan as shown on the video. The Court will address that subject below.

The third issue is the audio. There are two sub-issues.

Plaintiff seeks to redact some statements made by Defendant Corrigan that Plaintiff argues were "self-serving and are clearly not the law." *See* Pl.'s Mtn., at 15 (Dckt. No. 149). For example, Plaintiff argues that the video should be redacted to remove Corrigan's assertion

"that it was illegal for plaintiff to exit the van." *Id.* Plaintiff contends that this statement is hearsay (but it is not offered for its truth) and a "rationalization expressed after the fact." *Id.*

At this juncture, this Court sees little risk that the jury will be confused about the governing law based on the short statement by Officer Corrigan. It is relevant to malice. If need be, Plaintiff can propose a limiting instruction.

In the meantime, this Court is not so sure that Officer Corrigan was wrong. As this Court already ruled, flight from a lawful traffic stop constitutes resistance or obstruction under Illinois law. *See* 3/30/21 Mem. Opin. & Order, at 24 (Dckt. No. 141); *see also People v. Johnson*, 945 N.E.2d 2, 12 (Ill. App. 2010); *see also Cacciola v. McFall*, 2011 WL 13128620, at *6 (C.D. Ill. 2011).

Plaintiff also believes that the audio on the video from Officer Isaak's squad car should be redacted because the audio "comes from a microphone [Officer Isaak] was wearing, so when he takes off running and is yelling and panting, that happens away from where Nathaniel Pryor is." *Id.* at 14. "In fact, most of what [Officer Isaak] is saying is not even within earshot of plaintiff and defendant Corrigan." *Id.* Plaintiff raised the same argument in motion *in limine* no. 23.

The parties should meet and confer about this topic. It would potentially confuse the jury if the audio came from a location different than the one shown on the video.

In general, the Court will address the appropriate use of the dashcam videos with the parties at the final pretrial conference.

**Plaintiff's Motion *in Limine* #9 – Motion to permit Plaintiff to read Defendants' admissions in response to Plaintiff's requests to admit, and to preclude Defendants from contradicting those admissions.**

Plaintiff's motion *in limine* no. 9 to permit Plaintiff to read Defendants' admissions and to preclude Defendants from contradicting those admissions is hereby granted in part.

During discovery, Defendants responded to Plaintiff's requests for admissions. *See* Pl.'s Mtn., at 16 (Dckt. No. 149). Plaintiff has attached a list of 25 admissions that he intends to introduce at trial. *See* Judicial Admissions (Dckt. No. 149-1). Plaintiff believes that these admissions are binding on Defendants "and may not be controverted at trial or on appeal." *See* Pl.'s Mtn., at 16 (Dckt. No. 149).

Defendants oppose the motion by arguing that none of Plaintiff's proposed admissions are relevant to the trial. *See* Defs.' Resp., at 9–10 (Dckt. No. 152). For example, Plaintiff intends to introduce Defendants' admission "that they did not have probable cause to believe that Nathaniel Pryor had committed any criminal offenses prior to the point at which the van pulled into the driveway of 1123 Fenton Street." *Id.* at 9 (quoting Judicial Admissions, at ¶ 18 (Dckt. No. 149-1)). In Defendants' view, this admission is not relevant to claims remaining at trial. *Id.*

Responses to requests to admit under Rule 36 are judicial admissions. *See United Fire & Casualty Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584 (7th Cir. 2021). That much is clear from the text of Rule 36(b): "A matter admitted under this rule is conclusively established" unless the court grants a motion to allow it to be withdrawn or amended. *See* Fed. R. Civ. P. 36(b). Notice the adverb: "conclusively." *Id.* "A judicial admission trumps evidence." *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).

A judicial admission means that the fact is set in stone for purposes of trial, unless the court chisels it out. *Id.*; *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Unless the party securing an admission can depend on its binding effect, he [or she] cannot safely avoid the expense of preparing to prove the very matters on which he [or she] has

secured the admission, and the purpose of the rule is defeated."); *Airco Indus. Gases, Inc. v. Teamsters*, 850 F.2d 1028, 1037 (3d Cir. 1988) (reversing district court's failure to give Rule 36 admission binding effect) ("This admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."); Fed. R. Civ. P. 36 Advisory Committee Notes to 1970 Amendment. A request to admit is a way to take a question of fact off the table for trial.

Even so, not every response to a request to admit under Rule 36 is admissible. Admissibility depends on the Federal Rules of Evidence. So, the response to a request to admit needs to be relevant. *See* Fed. R. Civ. P. 401. And the response needs to pass muster under Rule 403, too. Normal rules (of evidence) apply.

Before this Court rules on the admissibility of the 25 requests to admit, the parties must do another meet and confer. The parties need to put more effort into narrowing the case, trying to find common ground, and focusing on what is important and what is truly disputed.

To that end, on January 24, 2023, this Court ordered the parties to meet and confer about the requests to admit. *See* 1/23/23 Order (Dckt. No. 195). As stated in that Order, Plaintiff's counsel must write a letter to defense counsel, and must explain – one by one – why each of the 25 requests to admit is relevant. On the flipside, defense counsel must write a letter to Plaintiff's counsel, and must explain – one by one – why each of the 25 requests to admit is irrelevant.

The Court directed the parties to file a statement and address whether they have narrowed the disputed issues. *See* 1/23/23 Order (Dckt. No. 195). The parties later filed that statement. *See* Joint Statement (Dckt. No. 206). The parties reached some common ground, but continue to disagree about 15 of the requests to admit.

This Court will rule on those requests to admit by separate order.

**Plaintiff's Motion *in Limine* #10 – Motion to bar bolstering of Defendants through testimony as to their awards and commendations and to bar Defendants from wearing special police uniforms, medals, or badges.**

Plaintiff's motion *in limine* no. 10 to bar Defendants from testifying to their awards and commendations and to bar Defendants from wearing special police uniforms, medals, or badges is hereby granted.

Plaintiff argues that any testimony regarding Defendants' "awards and commendations constitutes character evidence, which is generally inadmissible pursuant to Fed. R. Evid. 404(a)." *See* Pl.'s Mtn., at 18 (Dckt. No. 149). Plaintiff also argues that "[p]olice officers wearing their medals and badges in court would amount to improper character evidence and bolstering of police credibility." *Id.*

Defendants do not oppose the motion. *See* Defs.' Resp., at 10 (Dckt. No. 152). So, the Court grants Plaintiff's motion *in limine* no. 10. Defendants may not testify to their awards and commendations and may not wear special police uniforms, medals, or badges.

**Plaintiff's Motion *in Limine* #11 – Motion to permit Plaintiff to treat all witnesses employed by the City of Aurora as adverse witnesses under Rule 611(c) of the Federal Rules of Evidence.**

Plaintiff's motion *in limine* no. 11 to permit Plaintiff to treat all witnesses employed by the City of Aurora as adverse witnesses under Rule 611(c) is granted in part.

Plaintiff believes that he should be allowed to treat all witnesses employed by the City of Aurora as adverse witnesses. Typically, "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." *See* Fed. R. Evid. 611(c). However, the Court should "[o]rdinarily" – notice the adverb – allow a party to ask leading

questions on direct examination "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." *See* Fed. R. Evid. 611(c)(2).

Defendants oppose Plaintiff's motion *in limine* no. 11 in part. Defendants do not oppose the motion for "witnesses who were at the scene." *See* Defs.' Resp., at 10 (Dckt. No. 152). However, they oppose treating witnesses as hostile if they were *not* at the scene of Pryor's arrest. *Id.*

Under Rule 611(c), "[t]he normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party." *Ratliff v. City of Chicago*, 2013 WL 3388745, at *6 (N.D. Ill. 2013) (Dow, J.) (quotation marks omitted). "A classic example of a witness identified with an adverse party is a police officer called as a witness in a [section] 1983 trial involving an incident *in which he or fellow officers were involved*." *Id.* at *7 (emphasis added) (citing *Ellis v. City of Chicago*, 667 F.2d 606, 612–13 (7th Cir. 1981)).

In *Ratliff*, Judge Dow considered whether a section 1983 plaintiff could treat police officers of the Defendant City of Chicago as adverse witnesses. Judge Dow held that plaintiff could treat both officers present at the scene and officers who "were not present during the arrest" as adverse witnesses under Rule 611(c). *Id.* Because the officers who were not present at the scene were "both (i) involved in the incidents in question and (ii) employed by the [defendant], these witnesses were properly deemed adverse witnesses." *Id.*; *see also Jones v. City of Chicago*, 2017 WL 413613, at *7 (N.D. Ill. 2017) (St. Eve, J.) (granting a motion *in limine*) ("Jones may call police officers who were present at the arrest. If he does, he may ask these witnesses leading questions as 'witness[es] identified with an adverse party.'").

This Court rules as follows. Plaintiff can call adversely any police officers from the City of Aurora who worked on Plaintiff's case in any capacity. For any other officers or employees of the City of Aurora, the Court will apply a presumption that they may be called adversely because they are associated with a party. That said, if there is a particular reason to think that the presumption does not make sense for a particular witness (*e.g.*, a document custodian), then Defendants can raise the issue. The inclusion of a well-placed adverb in the text of Rule 611 shows that exceptions might apply. *See* Fed. R. Evid. 611(c)(2) (stating that a district court should "ordinarily" allow leading questions of a witness "identified with an adverse party").

**Plaintiff's Motion *in Limine* #12 – Motion bar witnesses from the courtroom except when the witness is testifying under Rule 615 of the Federal Rules of Evidence.**

Plaintiff's motion *in limine* no. 12 to bar witnesses from the courtroom except during the witness's testimony is hereby granted as follows.

Under Rule 615 "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own." *See* Fed. R. Evid. 615(b). However, the Court may not exclude "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." *Id.*

Defendants oppose Plaintiff's motion *in limine* no. 12 only partially. Defendants do not oppose the motion for witnesses who have yet to testify. *See* Defs.' Resp., at 10 (Dckt. No. 152) ("Defendants do not oppose this motion with respect to courtroom appearance prior to testifying."). But they do oppose excluding from court witnesses who have already testified. *Id.* ("After a witness has testified, that witness is entitled to view the trial like any other member of the public.").

The Court rules as follows. The parties themselves can attend the entire trial, and hear other witnesses testify. For example, Pryor and Officer Corrigan can listen to the entire trial, and can testify after hearing other witnesses.

Non-party fact witnesses cannot attend trial and listen to the testimony of other witnesses before they themselves testify. They need to testify without hearing what other witnesses had to say.

After non-party fact witnesses testify, it is conceivable that they could listen to the rest of the testimony, as members of the public. But that scenario would prevent them from being recalled as a witness. So, once a non-party fact witness steps down from the witness stand, that witness should not listen to the rest of the testimony without the parties talking it over with the Court. That witness cannot listen to the rest of the trial unless there is no chance that the witness will be recalled.

This Court offers a related directive. Counsel presumably will meet with witnesses before they testify. Counsel cannot summarize the prior trial testimony, or tell a fact witness what another witness said on the witness stand.

Trial testimony is not a team event. Non-party fact witnesses must testify based on their best recollection, without knowing what other people said on the stand.

**Plaintiff's Motion *in Limine* #13 – Motion to bar all evidence, testimony references to, or use of, any police reports by Defendants.**

Plaintiff's motion *in limine* no. 13 to bar Defendants from introducing any police reports into evidence is hereby granted in part.

Plaintiff argues that any statement "from police reports should not be considered because it is inadmissible hearsay." *See* Pl.'s Mtn., at 20 (Dckt. No. 149). However, Plaintiff believes

that he "may use police reports to impeach defendants, or as admissions of a party opponent."
*Id.*

Defendants do not oppose the motion. *See* Defs.' Resp., at 11 (Dckt. No. 152). So, the
Court grants Plaintiff's motion *in limine* no. 13 in part. Defendants may not introduce any police
reports as evidence. This ruling covers the admissibility of the police reports when offered by
Defendants (only).

That said, the motion *in limine* was too broad, covering any "reference to" or "use of"
any police reports. Defense counsel could use the police reports to refresh recollection, for
example.

Maybe there are other possible ways that the police reports could come up at trial. For
example, maybe an officer would testify that he didn't see "X" at the scene because he was busy
preparing a police report at the time. For now, the Court simply rules that the police reports are
not admissible if offered by Defendants.

**Plaintiff's Motion *in Limine* #14 – Motion to bar all evidence, testimony, and argument that
Plaintiff is poor or receiving public assistance.**

Plaintiff's motion *in limine* no. 14 to bar Defendants from introducing evidence that
Plaintiff is poor or receiving public assistance is hereby granted.

Plaintiff "fears that defendants may try to cast aspersions on him because he is poor, he
works at temporary jobs, and at times, he receives public assistance." *See* Pl.'s Mtn., at 21
(Dckt. No. 149). "Evidence of plaintiff having a low income is prejudicial and would be
distracting to the jury, who may react in an emotional way, rather than working to analyze the
evidence presented." *Id.*

Defendants do not oppose the motion.  *See* Defs.' Resp., at 11 (Dckt. No. 152).  So, the Court grants Plaintiff's motion *in limine* no. 14.  Defendants may not introduce the fact that Plaintiff is poor or receiving public assistance into evidence.

But once again, if Plaintiff opens the door, then Defendants could drive through it.  So, if Plaintiff or his counsel makes a comment about his financial condition (which seems unlikely), then Defendants could offer contrary evidence.

**Plaintiff's Motion *in Limine* #15 – Motion to bar all evidence, testimony, and argument that Plaintiff is to blame for the passage of time between the incident and trial.**

Plaintiff's motion *in limine* no. 15 to bar Defendants from introducing evidence that Plaintiff is to blame for the passage of time between the incident and trial is hereby granted.

"Plaintiff asks the Court to prohibit defendants from blaming plaintiff for the passage of time between the incident and trial."  *See* Pl.'s Mtn., at 22 (Dckt. No. 149).  Plaintiff argues that "Defendants should not be allowed to argue or imply that it is wrong to make them defend a case at this late date, and they should not be allowed to cast blame on plaintiff for continuing to pursue this matter."  *Id.*

Defendants do not oppose the motion.  *See* Defs.' Resp., at 11 (Dckt. No. 152).  So, the Court grants Plaintiff's motion *in limine* no. 15.  Defendants may not introduce evidence, testimony, or argument that attempts to blame Plaintiff for the passage of time between the incident and trial.

In general, the Court prohibits counsel and the witnesses from making any comment about the length of time that it took to get to trial.

**Plaintiff's Motion *in Limine* #16 – Motion to bar Defendants from using law enforcement criminal databases to investigate jurors' backgrounds and from selectively doing criminal background checks on potential jurors the defense wants to challenge.**

Plaintiff's motion *in limine* no. 16 to bar Defendants from using law enforcement criminal databases to investigate jurors', and potential jurors', backgrounds is hereby granted.

"Plaintiff asks that the Court bar defendants from gaining an unfair advantage by using federal, state, or municipal criminal databases to investigate the backgrounds of jurors and from selectively running criminal background checks on targeted jurors or potential jurors at any point in the trial." *See* Pl.'s Mtn., at 22–23 (Dckt. No. 149).

Defendants do not oppose the motion. *See* Defs.' Resp., at 11 (Dckt. No. 152). So, the Court grants Plaintiff's motion *in limine* no. 16. Defendants may not use law enforcement criminal databases to investigate the backgrounds of jurors (including potential jurors).

In fact, this Court expands the ruling as follows. Counsel may not perform research about the jurors, period. That directive includes, for example, any searches using google, LinkedIn, and so on. Any information about jurors (including potential jurors) must come from inside the courtroom (only). That way, all parties will have the same information, and will be on equal footing.

**Plaintiff's Motion *in Limine* #17 – Motion to bar Defendants from using financial circumstances as a defense to Plaintiff's request for punitive damages.**

Plaintiff's motion *in limine* no. 17 to bar Defendants from using financial circumstances as a defense to Plaintiff's request for punitive damages is hereby granted.

Plaintiff argues that "Defendants may try to garner sympathy by submitting their financial condition to a jury to demonstrate their inability to pay a large punitive damages award." *See* Pl.'s Mtn., at 23 (Dckt. No. 149).

Defendants do not oppose the motion. *See* Defs.' Resp., at 11 (Dckt. No. 152). So, the Court grants Plaintiff's motion *in limine* no. 17. Defendants may not use their financial circumstances as a defense to Plaintiff's request for punitive damages.

**Plaintiff's Motion *in Limine* #18 – Motion to bar all evidence, testimony, and arguments regarding the Court's prior rulings that there was probable cause for the arrest, that Corrigan's tackle of Pryor was a reasonable use of force, and that the first two searches of Pryor were reasonable.**

Plaintiff's motion *in limine* no. 18 to bar evidence, testimony, and arguments about the Court's prior rulings on probable cause for the arrest, the reasonableness of the tackle, and the reasonableness of the first two searches is hereby granted in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Once again, the issue is how much to tell the jury (if anything) about this Court's prior rulings. At the summary judgment stage, this Court ruled that: (1) the officers had probable cause to arrest Pryor; (2) Officer Corrigan's use of force when tackling Pryor was protected by qualified immunity; and (3) Pryor did not come forward with sufficient evidence to support a claim that the two searches by Officer Corrigan were unreasonable. *See* 3/30/21 Mem. Opin. & Order, at 25, 30, 42–43 (Dckt. No. 141).

Plaintiff argues that introducing evidence of these prior rulings would be unfairly prejudicial. *See* Pl.'s Additional Mtn., at 2 (Dckt. No. 197). Instead, Plaintiff suggests that this Court simply tell the jury that certain issues are off the table. "Plaintiff contends that the Court should neutrally inform the jurors that they should not speculate about what happened with the arrest or the incarceration, or the tackle, or the first two searches of plaintiff's genital area. That is not what they are here to decide." *Id.* at 3.

This motion plows much of the same ground as Plaintiff's motion *in limine* no. 7. As stated in response to that motion (*supra*), this Court is inclined to tell the jury what they have to decide, and what they don't have to decide, and leave it at that. The Court will renew that conversation with counsel at the continuation of the final pretrial conference.

**Plaintiff's Motion *in Limine* #19 – Motion to permit Plaintiff to describe the tackle and the first two searches and his reactions to these events.**

Plaintiff's motion *in limine* no. 19 to permit Plaintiff to describe the tackle and the first two searches and his reactions is hereby granted in part and denied in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

This motion is about parts of the story that do not give rise to a claim. As discussed, this Court already determined that Officer Corrigan's tackle of Pryor was protected by qualified immunity, and that his searches of Pryor were not unreasonable. *See* 3/30/21 Mem. Opin. & Order, at 30, 42–43 (Dckt. No. 141). Plaintiff seeks to testify about these events because "[i]t was in the context of being thrown to the ground and plaintiff having his face in the slush, that he was punched." *See* Pl.'s Additional Mtn., at 3 (Dckt. No. 197). So, Plaintiff believes that "[t]he jury should be allowed to hear the whole story" to put the later punches – which *are* at issue – in context. *Id.*

Likewise, Plaintiff contends that the jury should hear about the searches by Officer Corrigan to put the search by Officer Cantona "in context." *Id.* "Plaintiff had his crotch searched two times [by Defendant Corrigan] before the third search by defendant Damien Cantona." *Id.* So, Plaintiff argues that Corrigan's searches (which are not at issue) put Cantona's later search (which is at issue) in context. *Id.* at 3–4.

Defendants oppose the motion. They argue that "[t]he tackle and the first two searches are no longer at issue, and therefore, irrelevant." *See* Defs.' Resp. to Pl.'s Additional Mtn., at 3 (Dckt. No. 205). So, "[a]ny alleged damage flowing from the searches, or the takedown are also no longer at issue" and Plaintiff cannot recover damages for these alleged injuries. *Id.*

Defendants believe that it will confuse the jury if Plaintiff testifies about incidents that are no longer at issue. *Id.* Moreover, permitting Plaintiff to testify about the tackle and first two

searches would "improperly bolster" his punitive damages claim against Corrigan by discussing conduct that is not actionable. *Id.*

The Court grants the motion as it relates to the tackle. Plaintiff can describe the tackle, but should not go on and on about it.

For starters, the jury is going to see the tackle when it views the videos. Plaintiff can describe the tackle, and thus describe what the jury will see anyway.

The tackle provides context for the punches. The tackle and the punches were close in time – mere seconds apart. All things considered, it was a bang-bang, blow-by-blow interaction, so it is hard to consider one blow without the other.

The tackle and its effects on Plaintiff therefore play into Plaintiff's emotional state, his perception of pain, and how Plaintiff was behaving at the time of the punches. How he felt from the tackle could affect how he felt from the punches. The tackle could have precipitated a physical response, too.

For example, perhaps Plaintiff will testify to his shock and pain in the seconds after hitting the ground, and that this shock affected his behavior in the moments before he was punched. If Plaintiff was injured when getting tackled, that injury might inform how he moved or felt before Corrigan punched him.

Plaintiff's description of the tackle is also relevant to explain Plaintiff's physical position. The videos show the encounter, but they are not perfect. Plaintiff's description of the tackle and the landing – meaning his physical position – have a bearing on the reasonableness of the punches.

The Court adds one caveat. Defendants are correct that the takedown itself will not give rise to a claim at trial. So, Plaintiff may not testify about the tackle in a way that invites the jury

to award him damages based on the tackle. The tackle may not be an independent source of liability.

Plaintiff's counsel must not criticize the tackle or suggest that it should not have taken place. Plaintiff's counsel must not insinuate that the jury should award damages because the tackle crossed the line. The tackle is relevant, but it may not become the star of the show.

The Court grants the motion *in limine* as it relates to the two searches of Pryor's groin area conducted by Officer Corrigan. Plaintiff may testify to the fact that he was searched twice by Officer Corrigan, but not *where*. He may not call attention to the specifics of those two searches, including the fact that Officer Corrigan searched his groin area.

Simply put, it is unnecessary and gratuitous to describe searches of a groin area that are not actionable. Detailed descriptions of those searches are irrelevant and would confuse and mislead the jury.

Nothing about the searches by Officer Corrigan has any bearing on the reasonableness of the search by Officer Cantona at issue in this case. That is, the Court does not understand Plaintiff to argue that Officer Cantona should *not* have searched Plaintiff at all because he had already been searched by Officer Corrigan.

Instead, Plaintiff takes issue with the manner of Officer Cantona's search. The two prior searches by Officer Corrigan have little to do with that argument. He is arguing that Officer Cantona should not have squeezed his testicles *at all*, not that Officer Cantona should not have squeezed his testicles because Officer Corrigan already searched him.

There is a significant risk of unfair prejudice, too. Plaintiff wants to present evidence of the "first two searches of plaintiff's genitals." *See* Pl.'s Additional Mtn., at 1 (Dckt. No. 197).

Raising those searches seems gratuitous and distracting. It could engender sympathy for Plaintiff – and create a perception that Plaintiff was mistreated – for conduct that is not actionable.

Descriptions of those two searches by Officer Corrigan – when they are not part of a claim – would only confuse the jury. Only one search is at issue in this case, not three. Gratuitous and explicit descriptions of Officer Corrigan's searches would provide the jury with detail that could distract from, or bleed into, the search at issue in this case. *See* Fed. R. Evid. 403.

So, this Court will allow Plaintiff to describe the tackle. But Plaintiff cannot do so in a manner that creates the impression that the jury should award damages because of the tackle. Plaintiff's counsel cannot criticize the tackle itself, because it would confuse and mislead the jury. And Plaintiff cannot testify about any search of his groin area by Officer Corrigan.

**Plaintiff's Motion *in Limine* #20 – Motion to bar all evidence, testimony, and arguments that Plaintiff was obstructing the police in addition to resisting arrest.**

Plaintiff's motion *in limine* no. 20 to bar all evidence, testimony, and arguments that Plaintiff was obstructing the police, in addition to resisting arrest, is hereby granted in part and denied in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Plaintiff's motion is about his arrest and charge for "obstructing/resisting a peace officer" under 720 ILCS 5/31-1. *See* Criminal Cplt. (Dckt. No. 99-1). The State later dismissed the charge *nolle prosequi*. *See* 3/30/21 Mem. Opin. & Order, at 12 (Dckt. No. 141).

Plaintiff argues that he was charged with *resisting* a police officer, not with *obstructing* a police officer. *See* Pl.'s Additional Mtn., at 5 (Dckt. No. 197) ("The case at hand is about resisting arrest, not obstructing a peace officer."). He points to Corrigan's responses to requests to admit, where Corrigan admitted that Pryor "was charged with resisting arrest, pursuant to 720 ILCS 5/31-1 on March 23, 2015." *Id.* (quoting Defs.' Resp. to Requests to Admit, at ¶ 60 (Dckt.

No. 99-6)). He also points to the criminal complaint, which alleges that he "[k]nowingly resisted . . . being arrested" by Defendant Corrigan. *Id.* (quoting Criminal Cplt. (Dckt. No. 99-1)). And he contends that resisting arrest and obstructing a police officer are two separate crimes, albeit codified in the state statute. *Id.* at 4 (citing *People v. Baskerville*, 963 N.E.2d 898 (Ill. 2012)).

Plaintiff believes that introducing evidence that he was charged with *obstructing* a police officer would be prejudicial because it "would imply that plaintiff impeded some activity of the other officers, which did not occur and for which he was not charged." *Id.* at 5.

Defendants oppose the motion. They contend that "[f]leeing a lawful traffic stop constitutes resistance or obstruction." *See* Defs.' Resp. to Pl.'s Additional Mtn., at 4 (Dckt. No. 205) (quoting 3/30/21 Mem. Opin. & Order, at 24 (Dckt. No. 141)). Defendants also say that "Plaintiff fled and refused Corrigan's demand to get on the ground" and that these "actions could absolutely warrant an obstruction charge." *Id.*

The motion *in limine* is granted in part. Again, the dashcam footage shows that Pryor exited the van after it was pulled over for failing to signal. *See* 3/30/21 Mem. Opin. & Order, at 7 (Dckt. No. 141). He started to flee the scene, taking twelve steps in roughly four seconds. *Id.* Pryor then stopped in front of the squad cars and placed his hands in the air. *Id.* at 8. The dashcam audio records someone yelling "Get on the ground! Get on the ground!" and "Down, down . . . down!" *Id.*

Pryor did not get on the ground. So, when Corrigan approached Pryor, Corrigan took him down to the ground by grabbing him around the midsection and sweeping out his legs (*i.e.*, Corrigan tackled Pryor). *Id.* at 9.

Pryor was later charged with "obstructing/resisting a peace officer." *See* Criminal Cplt. (Dckt. No. 99-1); *see also* 720 ILCS 5/31-1 ("Resisting or obstructing a peace officer, firefighter,

or correctional institution employee.").  The complaint alleges that Pryor "[k]nowingly resisted . . . being arrested" by Officer Corrigan.  *Id.*  It also alleges that Pryor knew Corrigan "to be a peace officer engaged in the execution of his official duties" and "that he pushed/pulled away from . . . Corrigan and resisted his commands to get on the ground."  *Id.*

The Court rules as follows.  The parties should not get into the legal nuances between *resisting* a police officer and *obstructing* a police officer.  The jury might not understand the differences, which are likely to be confusing.  *See* Fed. R. Evid. 403.

If the parties got into the weeds about the legal elements of 720 ILCS 5/31-1, the jury might believe that whether the punches were lawful depends on which crime Pryor was charged with.  The lawfulness of Corrigan's punches does not depend on the legal technicalities of Pryor's state criminal charge.

The legal differences between the crimes are not particularly relevant, either.  *See* Fed. R. Evid. 401.  The exact theory that the State pursued in Pryor's case – resistance or obstruction – is not particularly relevant to whether Officer Corrigan used excessive force.  *See* 3/30/21 Mem. Opin. & Order, at 12 (Dckt. No. 141).  The conduct is more relevant than the later charging decision (including the decision to drop the case).

The Court will separately decide whether the jury should hear anything about the nature of the charges against Pryor.  The Court will discuss the issue at the next pretrial conference.

However, the Court's ruling does not bar Officer Corrigan from testifying about what he observed during the incident.  For example, he can testify about whether he thought Pryor was resisting arrest, and if so, by how much.  And he can testify about Pryor's acts – such as mentioning that he thought Pryor was fleeing the scene of the traffic stop – and what he thought about those acts.

Officer Corrigan can describe what he saw. But the parties should steer clear of making arguments or eliciting testimony about whether that conduct constituted *obstruction* as opposed to *resistance* under Illinois law.

**Plaintiff's Motion *in Limine* #21 – Motion to bar all evidence, testimony, and arguments that any of the reasons Defendant Corrigan gave during the internal investigation for why he tackled Plaintiff were legitimate reasons to punch him.**

Plaintiff's motion *in limine* no. 21 to bar all evidence, testimony, and arguments about statements made by Officer Corrigan during the internal investigation is hereby granted in part and denied in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

The motion is about statements that Defendant Corrigan gave during an internal investigation conducted by the City of Aurora's Office of Professional Standards. During the investigation, Corrigan stated that one reason why he tackled Plaintiff was because "it was an adverse area" and "members of our unit had recently been shot at" in the area. *See* Pl.'s Additional Mtn., at 6 (Dckt. No. 197) (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)).

Corrigan also mentioned that "[i]t's an unfriendly neighborhood." *Id.* (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)). And Corrigan stated that "[my] reason for stopping the vehicle was obviously for, uh, a narcotics type activity." *Id.* (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)).

Plaintiff argues that it would be prejudicial for the jury to hear that he was arrested in a high-crime or dangerous neighborhood. *Id.* He points to Plaintiff's motion *in limine* no. 5, which Defendants do not oppose, to bar evidence that the area of the arrest is a high crime, drug, or gang area. *Id.* He believes that Corrigan's testimony concerning the neighborhood (including that officers had recently been shot at in the area) falls within this earlier motion. *Id.*

53

Plaintiff also contends that Corrigan's statement that he stopped the van for narcotics-related activity is covered by Plaintiff's motion *in limine* no. 1, which seeks to bar evidence of the narcotics surveillance before the van was stopped for violating a traffic law. *Id.* at 6–7.

Defendants oppose the motion in part. Defendants acknowledge that they already agreed that they "will not state that this was a 'high crime, drug or gang area' and agreed that Defendant Corrigan will not testify to his prior knowledge of the Plaintiff." *See* Defs.' Resp. to Pl.'s Additional Mtn., at 4 (Dckt. No. 205). However, Defendants argue that Corrigan "is entitled to testify as to what he knew of the area at the time of the incident, which included a shooting of Aurora officers and that he was familiar with said area due to his job responsibilities as an Aurora Police Officer." *Id.*

The motion *in limine* is granted in part and denied in part. The Court will address each of Corrigan's statements during the internal investigation in turn.

Corrigan made two statements to investigators commenting on the generalized nature of the neighborhood where Pryor was arrested. He described it as "an adverse area" and "an unfriendly neighborhood." *See* Pl.'s Additional Mtn., at 6 (Dckt. No. 197) (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)). These statements are not specific – they are Corrigan's general perceptions of the safety of the area.

Both statements are covered by Plaintiff's unopposed motion *in limine* no. 5 to bar evidence, testimony, and arguments implying that the arrest took place in a high crime, gang, or drug area. *See* Pl.'s Mtn., at 8 (Dckt. No. 149). Defendants have reaffirmed that they do not oppose Plaintiff's motion no. 5, and the Court has granted the motion. *See* Defs.' Resp. to Pl.'s Additional Mtn., at 4 (Dckt. No. 205).

In context, Corrigan's statements that the neighborhood was "adverse" and "unfriendly" are equivalent to saying that the area was a high-crime area. The statements are a backdoor way to describe the neighborhood as being high in crime. So, they are excluded for the reasons already given. Corrigan may not testify that the arrest occurred in a high crime area, including by describing the area as "adverse" or "unfriendly."

However, Corrigan can testify that members of his unit had recently been shot at in the area. *See* Pl.'s Additional Mtn., at 6 (Dckt. No. 197) (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)). Unlike his generalized statements, the shooting is a specific incident that Corrigan was aware of when he arrested Plaintiff.

Knowledge of specific acts of violence against police officers in the area is relevant to the reasonableness of the use of force. Corrigan's knowledge that officers had recently been shot at in the area is part of the "totality of the circumstances." *See Common*, 661 F.3d at 943.

Prior acts of violence against police officers have a bearing on the perception of a possible threat. Such acts have a bearing on how a reasonable officer would have responded in that situation. A reasonable officer could take a need for personal safety into account.

The jury will need to decide "whether Officer [Corrigan] used excessive force based on the perspective of the reasonable officer on the scene, knowing what [Corrigan] knew and hearing and observing what [Corrigan] did." *See Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018). Specific instances of violence in the neighborhood could shed light on how much force a reasonable officer thought was appropriate, given all of the other circumstances.

Finally, Corrigan can testify that he stopped the van for "narcotics type activity." *See* Pl.'s Additional Mtn., at 6 (Dckt. No. 197) (quoting Corrigan Interview, at 7 (Dckt. No. 197-3)). In response to Plaintiff's motion *in limine* no. 1, the Court has ruled that Defendants can

introduce evidence of the drug-related surveillance that led to the stop. Officer Corrigan can testify about the drug-related surveillance consistent with the Court's ruling on motion *in limine* no. 1.

In sum, Defendants may not introduce generalized evidence that the neighborhood where the arrest occurred was a high crime, drug, or gang area (consistent with the Court's ruling on Plaintiff's motion *in limine* no. 5). Defendants may introduce evidence of specific instances of violence against police officers – including a recent shooting – in the area. And Defendants may introduce evidence of the drug-related surveillance consistent with the Court's ruling on Plaintiff's motion *in limine* no. 1.

**Plaintiff's Motion *in Limine* #22 – Motion to bar all evidence, testimony, and arguments of Defendant Corrigan's statements on the dashcam video from Officer Christoffel's squad car after the 00:03:30 mark.**

Plaintiff's motion *in limine* no. 22 to bar all evidence, testimony, and arguments of Defendant Corrigan's statements on the dashcam video from Officer Christoffel's squad car after the 00:03:30 mark is hereby denied. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Plaintiff's motion is a subset of his motion *in limine* no. 8, which also seeks to redact Corrigan's audio from the dashcam video on Officer Christoffel's squad car after the 00:03:30 mark.

Plaintiff's motion would paint a lopsided picture. Plaintiff wants to play a portion of the audio where he repeatedly asks the officer, "Sir, what seems to be the problem?" In fact, he asks that question, or something to that effect, no fewer than fifteen times.

Plaintiff's motion would cut off the answer. In the portions that Plaintiff hopes to exclude, Officer Corrigan explains why Plaintiff is on the ground, and why he acted as he did.

Cutting off Corrigan's audio at the 00:03:30 mark would create a skewed picture for the jury. Otherwise, the jury would hear Pryor repeatedly asking the same question, but would not hear Officer Corrigan's answer. To the jury, it may look as if there was no response. That's not balanced, and that's not what happened.

The audio is also relevant to punitive damages. Punitive damages go to malice. The exchange between Pryor and Corrigan informs whether Corrigan acted with the requisite intent.

Plaintiff reiterates his objection that Corrigan's statements are hearsay, but that argument misses the mark. To the extent that Plaintiff would like to play the audio with Corrigan's statements, statements of party opponents are not hearsay. *See* Fed. R. Evid. 801(d)(2). And to the extent that Defendants seek to introduce Corrigan's statements, they are not hearsay because they are not offered for their truth. *See* Fed. R. Evid. 801(c)(2). Instead, the statements show Corrigan's state of mind (which, again, is relevant for punitive damages). *See* Fed. R. Evid. 803(3).

**Plaintiff's Motion *in Limine* #23 – Motion to bar all evidence, testimony, and arguments of Officer Isaak's statements on the dashcam video from his squad car.**

Plaintiff's motion *in limine* no. 23 to bar all evidence, testimony, and arguments of Officer Isaak's statements on the dashcam video from his squad car is hereby granted in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Plaintiff's motion is a subset of his motion *in limine* no. 8, which also seeks to redact Officer Isaak's audio from the dashcam video on his squad car.

Again, the Court will address this issue with the parties at the next installment of the final pretrial conference. The Court wants to ensure that the jury is not confused by an apparent mismatch by the video and the audio. If the picture and the sounds came from different places,

the jury might get the wrong impression. Maybe there is a way to avoid confusion, but the Court wants to talk it through.

**Plaintiff's Motion *in Limine* #24 – Motion to bar all evidence, testimony, and arguments that the officers at the scene were assigned to a gang unit, drug unit, gun unit, Special Operations Unit, or any other unit implying that the case is about an arrest for guns or drugs.**

Plaintiff's motion *in limine* no. 24 to bar all evidence, testimony, and argument implying that the officers at the scene of the arrest were with a drugs, guns, or gang unit is hereby granted in part and denied in part. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Plaintiff argues that "this case has nothing to do with gang activity, drugs, or guns." *See* Pl.'s Additional Mtn., at 11 (Dckt. No. 197). That's not quite right. The traffic stop took place after the police received a tip about illicit drug-related activity.

In response to motion *in limine* no. 1, this Court has allowed the parties to present the overall context, including the fact that the traffic stop was part of ongoing drug surveillance. Given that reality, this Court will allow the officers to reveal that they were assigned to a drug unit. Practically speaking, the jury won't be surprised to learn that the officers doing the drug surveillance worked in the drug unit.

That said, there is no apparent need to tell the jury that they worked in a gang unit or a gun unit. The officers were not doing gang-related or gun-related surveillance, so nexus to the traffic stop is more attenuated. Anything more is potentially distracting.

**Plaintiff's Motion *in Limine* #25 – Motion to bar all evidence, testimony, and arguments regarding the criminal histories of Raymond Johnson and Terrence Mading.**

Plaintiff's motion *in limine* no. 25 to bar all evidence, testimony, and argument regarding Raymond Johnson's and Terrence Mading's criminal histories is hereby granted. *See* Pls.' Additional Mtn. (Dckt. No. 197).

Johnson and Mading were in the van with Plaintiff when it was pulled over. *Id.* at 12. Plaintiff seeks to bar Defendants from introducing their criminal histories because neither Johnson nor Mading is testifying at trial. *Id.*

Plaintiff argues that the actions of Johnson and Mading are not at issue in this case, so their criminal histories are irrelevant. Also, it would be prejudicial to introduce their criminal histories because it would associate Plaintiff with people with criminal records. *Id.*

Defendants did not respond to Plaintiff's motion *in limine* no. 25, so the Court deems the motion unopposed. *See* Defs.' Resp. to Pl.'s Additional Mtn., at 6–7 (Dckt. No. 205). The motion is granted. The parties may not introduce the criminal histories of Johnson or Mading.

**Plaintiff's Motion *in Limine* #26 – Motion to bar all evidence, testimony, and arguments regarding the police booking photographs of plaintiff produced at the pretrial conference.**

Plaintiff's motion *in limine* no. 26 seeks to bar evidence of the police booking photographs taken when Plaintiff was arrested on March 6, 2015, March 23, 2015 (*i.e.*, the day of the incident in question), and November 6, 2015. *See* Pls.' Additional Mtn. (Dckt. No. 207).

At the final pretrial conference, defense counsel gave Plaintiff's counsel copies of mug shots that they hope to use at trial. Plaintiff responded by moving to exclude the photos, arguing that they are a backdoor way of getting Plaintiff's arrest history into the record.

The Court wants to see the photos, and then will discuss this issue with counsel at the next installment of the final pretrial conference. Unless there is some good reason to exclude them, photos from the day in question should be admissible. The jury will already know that Plaintiff was arrested on the day in question. And the juries will see other pictures, too (*i.e.,* the video). The photographs from the police station could shed light on whether Plaintiff suffered an injury.

That said, this Court is skeptical of the pictures from other arrests, given its earlier ruling that the jury should not hear about other arrests.

**Plaintiff's Motion *in Limine* #27 – Motion to bar all evidence, testimony, and arguments about the tackle of plaintiff being "reasonable."**

Plaintiff's motion *in limine* no. 27 seeks to exclude any statements suggesting that this Court declared that the tackle was "reasonable."  *See* Pls.' Additional Mtn. (Dckt. No. 207).

The Court agrees.  This Court held that the tackle was protected by qualified immunity. This Court did not hold that the tackle was reasonable.  *See* 3/30/21 Mem. Opin. & Order, at 27–30 (Dckt. No. 141).  And, in any event, this Court plans to instruct the jury that it does not need to decide whether the tackle was reasonable.

**Plaintiff's Motion *in Limine* #28 – Motion to bar all evidence, testimony, and arguments of any interaction Defendant Damien Cantona may claim at trial to have had with Nathaniel Pryor on March 23, 2015, in contradiction to his response to Plaintiff's request to admit.**

Plaintiff's motion *in limine* no. 28 seeks to prevent Officer Cantona from walking back his response to Plaintiff's request to admit no. 1.  *See* Pls.' Additional Mtn. (Dckt. No. 207). Officer Cantona "admit[ted] he is a police officer and can neither admit nor deny that he interacted with Pryor on March 23, 2015, in front of 1123 Fenton Street, because he does not recall."  *Id.* at 5.

The Court will discuss this request to admit at the next installment of the final pretrial conference.  The Court wants to hear more about the nature of the dispute, if any.

**Plaintiff's Motion *in Limine* #29 – Motion to bar all evidence, testimony, and arguments regarding Defendant Damien Cantona's disability.**

Plaintiff's motion *in limine* no. 29 seeks to prevent Officer Cantona from talking about his disability.  *See* Pls.' Additional Mtn. (Dckt. No. 209).  Again, the Court wants to hear more about it.

**Defendants' Motion *in Limine* #1 – Motion to read a preliminary instruction about the circumstances of the arrest.**

Defendants' motion *in limine* no. 1 to read a preliminary instruction describing the circumstances leading up to the arrest is hereby granted in part and denied in part.

Defendants seek a preliminary instruction informing the jury that (1) Officer Corrigan had probable cause to arrest Plaintiff, (2) the initial tackle of Plaintiff was a reasonable use of force, (3) the only use of force at issue are the two strikes following the tackle, and (4) the only claim against Defendant Cantona relates to the bodily search of Plaintiff attendant to Plaintiff's custodial arrest. *See* Defs.' Mtn., at 1–2 (Dckt. No. 151). Defendants also seek to bar Plaintiff from arguing that Defendants lacked probable cause to arrest Plaintiff or that Defendant Corrigan's initial use of force – when tackling Plaintiff – was unreasonable. *Id.* at 2.

Plaintiff objects in part.[5] Plaintiff believes that this Court should inform the jury what is at issue, and what is not at issue. "The jury should be told, if anything, that they are not to determine whether the arrest was justified or not, and that they are not to determine whether the 'takedown' was reasonable or not. They should be instructed that they are not to speculate on those issues, but are to focus instead on the two strikes and the third body search." *See* Pl.'s Resp., at 1 (Dckt. No. 157).

As things stand, the Court prefers Plaintiff's approach. Instead of telling the jury how this Court ruled (which may get complicated), the Court could simply to tell the jury what they need to decide. That is, this Court is inclined to tell the jury what it needs to decide, and what it does not need to decide.

---

[5] Plaintiff objects to all of Defendants' motions *in limine* on the grounds that Defendants did not "include a certification from counsel summarizing their attempts to reach agreement." *See* Pl.'s Resp., at 1 (Dckt. No. 157).

As stated above, the Court directs the parties to work together cooperatively, and propose a jury instruction that explains what the issues are, and what the issues aren't.

**Defendants' Motion *in Limine* #2 – Motion to bar Plaintiff from presenting evidence of damages from his arrest and prosecution.**

Defendants' motion *in limine* no. 2 to bar Plaintiff from presenting evidence or testifying as to any damages relating to his arrest and prosecution is hereby granted.

The motion relates to Plaintiff's deposition testimony about the consequences of his arrest and prosecution. *See* Defs.' Mtn., at 2 (Dckt. No. 151). Defendants seek to bar testimony about money spent on defense costs, as well as testimony relating to other consequences of Plaintiff's arrest, including the revocation of his probation that resulted in his incarceration. *Id.*

Plaintiff does not appear to oppose the motion. He states that he "does not intend to testify regarding his damages for defense costs or as a result of his revocation of probation." *See* Pl.'s Resp., at 3 (Dckt. No. 157).

The case involves claims about excessive force and an illegal search. There is no false arrest claim. The jury will know that Plaintiff was seized (after watching the video). But the jury does not need to hear any testimony about any damages suffered from the arrest and any ensuing prosecution.

So, the Court grants Defendants' motion *in limine* no. 2. Plaintiff may not present evidence of damages from his arrest and prosecution, including the revocation of his bond.

**Defendants' Motion *in Limine* #3 – Motion to permit cross-examination concerning claimed emotional distress damages.**

Defendants' motion *in limine* no. 3 to allow Defendants to cross-examine Plaintiff as to other potential causes of his claimed emotional distress is hereby granted in part.

The motion anticipates that Plaintiff "will testify regarding claimed emotional distress damages." *See* Defs.' Mtn., at 3 (Dckt. No. 151). Defendants ask the Court to rule that such testimony "opens the door to full-cross examination by Defendants as to other potential causes of Plaintiff's claimed emotional distress," including "multiple convictions" and "scores of other arrests, including the arrest in this case." *Id.*

Plaintiff opposes the motion. He argues that this motion is merely an attempt to bring in otherwise impermissible evidence of Plaintiff's prior criminal history. *See* Pl.'s Resp., at 3 (Dckt. No. 157). According to Plaintiff, "[d]amages from being beaten up by the police and being sexually handled by the police is in no way related to, or justified by, plaintiff's prior criminal record." *Id.* at 3–4.

In its rulings on other motions *in limine*, this Court has limited the ability of the parties to present evidence of Plaintiff's prior convictions and arrests. A demand for emotional distress damages is not a backdoor way to get around that ruling, and present evidence that is otherwise inadmissible. Causation is fair game, but only up to a point.

The Court limits the evidence as follows. Defendants can explore whether the arrest from the incident in question caused the emotional distress. The jury will know that Defendant was arrested, so exploring that topic won't be much of a revelation. But Defendants cannot get into whether a prior arrest or conviction caused the emotional distress. Any probative value from exploring that causation theory would be substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Civ. P. 403.

**Defendants' Motion *in Limine* #4 – Motion to allow impeachment evidence of Plaintiff's prior criminal convictions.**

Defendants' motion *in limine* no. 4 to allow Defendants to introduce impeachment evidence of prior convictions under Federal Rule of Evidence 609(a) is hereby granted in part and denied in part.

Defendants' motion *in limine* no. 4 is the mirror image of Plaintiff's motion *in limine* no. 6, which seeks to bar Plaintiff's prior convictions for purposes of impeachment. The Court has already granted in part and denied in part Plaintiff's motion to exclude Pryor's felony convictions. The same ruling applies here. Again, Defendants can raise the fact that Plaintiff has felony convictions, but must do so through a "sanitized" version of the events.

**Defendants' Motion *in Limine* #5 – Motion to bar evidence of the internal investigation into Defendant Corrigan.**

Defendants' motion *in limine* no. 5 to bar Plaintiff from introducing evidence of an internal investigation of Officer Corrigan is hereby granted in part.

The motion is about an internal investigation conducted by the Aurora Police Department into Defendant Corrigan's conduct relating to the incident at issue. *See* Defs.' Mtn., at 4 (Dckt. No. 151). The investigation ultimately led Corrigan to receive a written reprimand for the way he described his uses of force in the police report, but it exonerated him regarding excessive use of force. *Id.*

Defendants argue that the investigation is irrelevant and unfairly prejudicial, as it would "result in a trial within a trial." *Id.* at 4–5. And Defendants point out that "[v]iolation of Police Department rules and regulations cannot establish proof that a Defendant violated a Plaintiff's constitutional rights." *Id.* at 5.

"It is well-settled that violations of the Chicago Police Department Rules and Regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights." *See Hill v. City of Chicago*, 2011 WL 3205304, at *3 (N.D. Ill. 2011); *Thompson v. City of Chicago*, 472

64

F.3d 444, 454–55 (7th Cir. 2006) ("What's more, this court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.' In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.") (citation omitted).

Plaintiff does not oppose the motion to the extent that the motion seeks to bar the investigation's conclusions. *See* Pl.'s Resp., at 7 (Dckt. No. 157). But Plaintiff doesn't want to completely close the door. He wants to use at trial "any evidence or testimony obtained by the Aurora Police Department's Internal Affairs Division in its investigation." *Id.* at 7–8. That collection includes admissions by Defendants, as well as statements from other witnesses. *Id.*

Plaintiff further argues that he should be allowed to introduce evidence that Corrigan violated police department rules. *Id.* at 8. To that end, he suggests Seventh Circuit Pattern Jury Instruction 7.04 on the topic of internal police rules and regulations, which "should clarify for the jury the weight it should give to any violation of police policies and procedures." *Id.*

As a general matter, the Court will exclude any evidence about any alleged violation of the rules or regulations of the Aurora Police Department. Evidence about a violation of rules is "completely immaterial." *See Thompson*, 472 F.3d at 454–55.

In addition, the Court excludes any evidence about the existence of the investigation, as well as the findings by the Aurora Police Department about the use of force. *See* Fed. R. Evid. 403. Telling the jury about the investigation could invite speculation about how the investigation ended. It would encourage the exercise of imagination, which could create prejudice to either side.

It would not help the jury to hear what the Aurora Police Department thought about the use of force. The jury is the decisionmaker. The jury will hear and watch the evidence, and will decide for itself whether Officer Corrigan used excessive force. The jury does not need to hear what somebody else thought about the evidence.

The fact that Officer Corrigan received a written reprimand from the Aurora Police Department is not particularly probative, either. He did not receive a reprimand for using excessive force. He received a reprimand for not describing the events accurately. But there is no claim in this case about how Officer Corrigan described the events.

That said, any statements by Officer Corrigan are admissible as a statement of a party opponent. So, if Officer Corrigan made a statement that described what happened, Plaintiff could offer it. If counsel seeks to present that evidence to the jury, counsel must let the Court know in advance (before trial), identify the statements in question, and explain how she plans to present that evidence without getting into the details of the investigation.

That said, if Plaintiff's counsel seeks to offer such statements, counsel must not refer to the existence of an investigation by the Aurora Police Department. It is enough to say that Officer Corrigan gave a statement about the incident before trial, or something comparable.

Counsel must not reveal the existence of an investigation, or a disciplinary proceeding, or anything along those lines. Keep it short, cryptic, and plain vanilla.

At the final pretrial conference, defense counsel argued that any statements made during an internal investigation are categorically out of bounds, even if they were statements of a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence. Counsel offered three cases, but they do not lend a hand.[6] *See* Defs.' Resp. to Pl.'s Mtn. for Witness Designations, at ¶ 3

---

[6] The first case, *Jones v. City of Chicago*, 2017 WL 413613 (N.D. Ill. 2017) (St. Eve, J.), simply cited the "well-settled" proposition "that violations of [internal police rules and regulations] cannot establish

(Dckt. No. 196). The existence of an investigation does not put admissions into a protective bubble.

In a similar vein, Plaintiff could use any witness statements from the internal investigation to impeach the witnesses. But if the witness is not a party, then the witness statements would not come into evidence. They would play a role for impeachment, only.

In sum, Plaintiff can use any admissions made by Officer Corrigan during the investigation, either as impeachment or as substantive evidence. But counsel cannot tell the jury where they came from. The jury should not know that they came from an internal investigation. It is enough to say that Officer Corrigan made statements before trial, and leave it at that.

**Defendants' Motion *in Limine* #6 – Motion to allow testimony as to the underlying circumstances giving rise to Corrigan's use of force.**

Defendants' motion *in limine* no. 6 to allow testimony and evidence as to the underlying circumstances which gave rise to Defendant Corrigan's use of force is hereby granted in part and denied in part.

Defendants' motion is the mirror image of Plaintiff's motion *in limine* no. 1, which seeks to exclude evidence about the police investigation that led to Plaintiff's arrest. *See* Pl.'s Mtn., at 1–2 (Dckt. No. 149). The same ruling applies here.

---

proof that a defendant violated a plaintiff's constitutional rights." *Id.* at *3 (quotation marks omitted). The Court did not declare that any statements made during an investigation were necessarily inadmissible. The second case, *Paradiso v. Obaldo*, 2009 WL 3272217 (N.D. Ill. 2009), held that "*evidence that an investigation occurred* and the decision reached by the [department's internal affairs department] are irrelevant given that violations of local laws and regulations have no bearing on claims brought under 42 U.S.C. § 1983, which involve violations of the constitution." *Id.* at *1 (emphasis added). The Court agrees that the jury should not hear about the existence of the investigation. But again, *Paradiso* did not hold that a statement made by an officer during an investigation is inadmissible. *Paradiso* did not address whether any statements made during the investigation could come in as substantive evidence. The third case, *Foreman v. Johnson*, 2007 WL 9810984, at *2 (N.D. Ill. 2007), is in the same vein. None of the cases stand for the proposition that statements made during an internal investigation are necessarily inadmissible.

**Defendants' Motion *in Limine* #7 – Motion to bar generalized comments regarding social justice issues, George Floyd, or any similar general matter.**

Defendants' motion *in limine* no. 7 to bar Plaintiff from making any general statements concerning social justice issues and police conduct is hereby granted.

The motion seeks to bar Plaintiff from making any statements about "Police Department 'Code of Silence,' George Floyd, social justice, or any similar general comments" on the ground that they would be unfairly prejudicial. *See* Defs.' Mtn., at 6 (Dckt. No. 151).

Plaintiff does not object to the motion as a general matter, but he asks the Court to reserve the issue until trial. *See* Pl.'s Resp., at 13 (Dckt. No. 157). He argues that some evidence of unrelated police misconduct may be relevant to his state of mind, meaning his fear that the encounter would escalate and result in harm to him. *Id.* And he asks the Court to permit him to explore police witness bias – particularly officer reluctance to implicate one another – on cross-examination. *Id.* at 14.

The motion *in limine* is granted as follows. The case is about the events on a particular day, involving particular people, not social justice issues for society writ large. References to broader trends, issues, and incidents involving police officers is not relevant, and any limited relevance would be substantially outweighed by the risks of unfair prejudice and confusing, misleading, and distracting the jury. *See* Fed. R. Civ. P. 403.

Pryor can testify about why he acted as he did. He can explain why he left the van, and he can explain why he stopped and put his hands up. If he was afraid, he can testify that he was afraid. There is no need to tell the jury why he felt afraid. He can testify about what he did, but he cannot get into social justice issues writ large.

Generalized evidence about the police, such as a "code of silence," is unfairly prejudicial and inadmissible. *See Jones v. City of Chicago*, 2017 WL 413613, at *3 (N.D. Ill. 2017) ("Jones

also may not use the terms 'code of silence,' 'blue wall,' or other similar terms, as they are unduly prejudicial."). "District courts often exclude *generalized* evidence of a code of silence, but permit plaintiffs to develop the theme that a code of silence existed among the particular officers involved in the events underlying the complaint." *Hillard v. City of Chicago*, 2010 WL 1664941, at *3 (N.D. Ill. 2010) (collecting cases) (emphasis in original); *Smith v. Garcia*, 2018 WL 461230, at *5 (N.D. Ill. 2018).

That said, if Plaintiff has a concrete reason to believe that a particular officer covered up for one of the officers in question, it could shed light on whether that witness is biased. *See Hillard*, 2010 WL 1664941, at *3; *see also Hill v. City of Chicago*, 2011 WL 3205304, at *5 (N.D. Ill. 2011). But the line of inquiry should be officer-specific, not about police officers in general.

Plaintiff's counsel also needs to preclear any anticipated cross examination based on the notion that police officers are reluctant to testify against each other. Counsel could explore the relationship between a witness and the Plaintiff, because it goes to bias, but should steer clear of generalized statements about the police (*e.g.,* "code of silence," and "blue wall").

**Defendants' Motion *in Limine* #8 – Motion to bar cross-examination about why Corrigan arrested Plaintiff.**

Defendants' motion *in limine* no. 8 to bar Plaintiff from introducing any evidence or testimony from Corrigan regarding his reasons for arresting Plaintiff is hereby granted in part.

The motion seeks to bar cross-examination of Corrigan regarding his reasons for arresting Plaintiff for "obstructing." *See* Defs.' Mtn., at 6 (Dckt. No. 151). Defendants argue that the Court has "already ruled that this arrest was lawful and any such cross-examination is irrelevant" to the use of force at issue. *Id.*

69

Plaintiff opposes the motion. He argues that (1) Corrigan did not charge Plaintiff with "obstructing," but rather resisting arrest; and (2) Plaintiff should be allowed to ask Corrigan questions about his state of mind, which is relative to punitive damages. *See* Pl.'s Resp., at 16 (Dckt. No. 157).

There is no remaining false arrest claim in the case. The reasons for the arrest do not have much of a bearing on whether the officers used excessive force or performed an illegal search. That said, the Court will explore with the parties whether the jury should hear that Plaintiff was arrested for resisting arrest, but was not arrested for or charged with any drug offense.

As a general matter, the officers can testify about why they followed the van, and why they pulled the van over. They can testify about the use of force, too. But counsel cannot elicit evidence, make arguments, or otherwise call into question this Court's ruling that the officers had probable cause to pull over the vehicle, and had probable cause to arrest Plaintiff.

**Defendants' Motion *in Limine* #9 – Motion to change the caption to exclude the other individual Defendants.**

Defendants' motion *in limine* no. 9 to change the case caption to exclude the other individual Defendants other than Cantona and Corrigan is hereby granted.

Defendants ask the Court to change the case caption to list only the remaining individual Defendants, Officers Cantona and Corrigan. *See* Defs.' Mtn., at 6 (Dckt. No. 151). Plaintiff does not oppose the motion to the extent that it modifies the case for purposes of identifying the case and parties to the jury. *See* Pl.'s Resp., at 17 (Dckt. No. 157). But Plaintiff objects to any permanent change to the caption because it "should stay intact for the appeal." *Id.*

The Court will ensure that the jury does not see a caption that includes any references to any other defendants. Counsel must do the same. The jury will not see the full caption, but the full caption will remain on the docket.

**Defendants' Motion *in Limine* #10 – Motion to bar evidence, testimony, or argument stating or implying that the remaining claims have anything to do with race.**

Defendants' motion *in limine* no. 10 to bar Plaintiff from making any argument or eliciting any testimony, by express statement or implication, that the remaining claims have anything to do with race is hereby granted as follows.

The motion is about the discussion of race in front of the jury. In particular, Defendants identify Plaintiff's potential testimony about why he left the vehicle. *See* Defs.' Mtn., at 6–7 (Dckt. No. 151). Plaintiff explains that his actions – stepping out of the van and in front of the police car – were to get in front of the police vehicle's dashcam, "so that anything the police did to him would be recorded." *See* Pl.'s Mtn., at 15 (Dckt. No. 149). He adds that this was a "very smart move for a young Black man" confronted by white police officers. *Id.* Defendants ask this Court to bar this and similar "inflammatory racial rhetoric" because "[t]here is absolutely no element of race in this case." *Id.* at 7.

Plaintiff opposes the motion and sees racial context as relevant to his state of mind. *See* Pl.'s Resp., at 17–18 (Dckt. No. 157). Plaintiff argues that his fear arose from the fact that he was a Black man facing an encounter with "angry white police officers." *Id.* at 18. As Plaintiff sees it, "[i]f fear was the reason plaintiff walked in front of the dash camera in the police vehicle, so that whatever happened would be recorded, then he should be allowed to say that." *Id.* at 17.

The Court rules as follows. Plaintiff can testify about why he left the van, and about why he ran to the bottom of driveway and then stopped. He can testify that he wanted the interaction to be recorded by the dashcam.

But he cannot testify about any race-based reasons for doing so. Any such testimony is more prejudicial than probative, and is likely to distract and confuse the jury. Plaintiff also must avoid race-based smears, too, such as the statement that he faced an encounter with "angry white police officers." *See* Pl.'s Resp., at 17–18 (Dckt. No. 157).

The case is about whether Officer Corrigan used excessive force when Plaintiff was on the ground, and about whether Officer Cantona conducted an illegal search. This Court is not aware of any evidence suggesting that racial animus played a role in the events in question.

So the parties must avoid injecting racial issues into the case unnecessarily. *See, e.g.*, *Martinez v. City of Chicago*, 2016 WL 3538823, at *13 (N.D. Ill. 2016) (Dow, J.) ("Although racial bias could be relevant to a claim of false arrest, there is no evidentiary basis for introducing allegations of racial animus into this trial, and Plaintiff does not argue otherwise."). Raising racial issues unnecessarily could distract and confuse the jury, and provoke passions that would interfere with the judicial process. "'[A]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality.'" *Martinez*, 2016 WL 3538823, at *13 (quoting *Dyson v. Szarzynski*, 2014 WL 7205591, at *8 (N.D. Ill. 2014)); Fed. R. Civ. P. 403. The jury will have enough on their minds and on their plates already.


Date:   January 30, 2023                    _____

                                            Steven C. Seeger
                                            United States District Judge